[S. F. No. 4436. In Bank.—February 7, 1907.]

In the Matter of the Estate of JEROME B. PAINTER, Deceased. J. MILTON PAINTER et al., Appellants, v. WIDOW AND SONS OF DECEASED, Respondents.

ESTATES OF DECEASED PERSONS—EFFECT OF WILL OF DECEDENT—GENERAL LEGACIES—SPECIFIC DEVISES AND LEGACIES—CONSTRUCTION OF CODE.—Under section 1360 of the Civil Code, read together with sections 1357, 1359, and 1362 thereof, specific devises and legacies given in the will of a decedent are free from any contribution to the payment of general legacies given therein.

ID.—TEST OF SPECIFIC DEVISES AND LEGACIES.—Though the definition of a specific legacy in section 1357 of the Civil Code refers in terms only to legacies, yet the question whether a testamentary gift is specific or general is to be determined by the same tests where the subject of the gift is real property as where it is personal property.

ID.—LAND SPECIFICALLY DEVISED TO RESIDUARY LEGATEES—PARTIAL DISTRIBUTION.—Where land definitely described and distinguished from all other parcels of land or property was devised to the residuary legatees in connection with a residuary devise and bequest to them of all other real and personal property not otherwise appropriated,

the land so described and devised must be deemed specifically devised, and a partial distribution thereof may be awarded to the devisees, as against general legatees.

ID.—QUESTION OF INTENT.—The question whether the testator intended to make a specific devise or bequest to those whom he has constituted his residuary legatees or the contrary is one purely of construction, to be determined from the language employed; and the question whether or not the testator at the time of the execution of the will and codicil had sufficient personal property to pay all the general legacies mentioned in the will is a circumstance bearing on his intent.

ID.—OWNERSHIP OF HALF-INTEREST IN FIRM.—Where there was sufficient evidence to show that the half-interest of the decedent in a firm was enough to pay the indebtedness and leave a surplus, which would be adequate to discharge the general legacies under the will, the devises of the real estate by specific description to the residuary legatees must be deemed specific.

ID.—EVIDENCE—STATEMENT BY TESTATOR.—A paper shown to be in the handwriting of the testator, purporting to contain a statement of the assets and liabilities of the partnership in which he owned one-half interest was competent evidence to show the testator's belief as to the *status* of the business.

APPEAL from orders of the Superior Court of the City and County of San Francisco refusing to compel payment of legacies and making partial distribution of real estate. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Pringle & Pringle, for Appellants.

M. B. Kellogg, and Francis J. Heney, for Respondents.

SLOSS, J.—Jerome B. Painter died on the sixth day of February, 1883, leaving a will and codicil, which were admitted to probate by the superior court of the city and county of San Francisco on the thirteenth day of April, 1883. The administration of the estate has been pending in said court ever since the last-mentioned date.

In March, 1898, J. Milton Painter, Theodore P. Painter, Adaline Mininger, Grace Mininger, J. Milton Painter, as executor of the will of Margaret Painter, deceased, Josephus Painter, by his guardian, J. Milton Painter, and Thomas B.

Cochran, claiming as legatees under the will, petitioned the superior court for an order requiring the executor and executrix to make payment of their legacies. The executor and executrix answered, setting up certain grounds of opposition to the prayer of this petition. At the same time the widow and sons of the decedent filed a petition asking for the partial distribution to them of certain real property belonging to the decedent. This petition was opposed by the parties who had asked for the payment of their legacies, and a hearing was had upon both applications together. The court made findings, and upon them denied the application of the first petitioners for payment of the legacies to them and granted the application of the widow and children for partial distribution. From both these orders appeals are now prosecuted.

Jerome B. Painter's will was executed on the eleventh day of March, 1864, while the codicil bore date March 11, 1874. The provisions of the will, so far as material to the present controversy, are as follows:—

"1st. I give and bequeath to my brothers, J. Milton Painter and Theodore P. Painter, all my share, right, title and interest of, and in and to, the copartnership of Painter & Co., the stock thereof, its business, good will, and all interests of whatsoever nature connected with them as partners (except real estate), debts due us, and moneys out at interest, for their own use and benefit, upon the express condition that they assume all debts standing against the concern, and pay off that certain mortgage on property southwest corner of Washington and Sansome streets.

"2nd. I also give and bequeath to them, my brothers, J. M. Painter and T. P. Painter, aforesaid, that certain building and lot of land in which our business has been conducted, known as Nos. 510 and 512 Clay Street, and more particularly described as being on Clay Street, commencing on the north side 73 feet west from Sansome Street, thence west 15.9x91.8 feet deep, with the proviso, that a certain mortgage on the same property, given by me to Miss Charlotte Rhodes for five thousand dollars as part of the purchase money, bearing interest at seven per cent per annum, will be assumed by them, both interest and principal, and paid as they may become due.

"3rd. I give and bequeath to my sons, Albert and Walter, that certain building and lot of land on Clay Street, known as Nos. 318, 320, and 322, and more particularly described as follows: [Here follows a particular description.] The property to be kept fully insured and in good repair from the moneys received from the rents thereof, and the building to be rented or let to the best advantage as well for the revenue to be derived from it, as for the future safety and well condition of the building and property. The balance of the rents, after paying the above necessary expenses, to be apportioned as follows: One sixth to be regularly sent to my mother, as her share, so long as she may live; and one sixth to my sister Adaline and brother Josephus, to be equally divided between them, so long as they may live, but should either die, then the sum apportioned to revert to my wife, as long as she remains my widow; but should she again marry, then to revert to my children, Albert and Walter. Should either of my children die, the whole of this property, and rents as apportioned, to go to the remaining one. The balance of the rents, viz.: two thirds to go to my wife, as long as she remains my widow, to be used for her support and maintenance, and that of my aforesaid children, and they to be properly educated with the best of a good English education; . . . The total rents of this property to revert to my children, as each becomes of age, namely, twenty-one years, to be used by them for their own particular benefit and free use, with my very particular injunction that they never see or know that their mother, aunts, uncles—more particularly their grand-parents, or their uncle, my brother Josephus—is in want of any of the necessaries, comforts, or even ordinary luxuries of life, without their cheerfully and cordially administering to their wants. . . .

"4th. I give and bequeath to my beloved wife, and mother of my children, all my remaining property, as per schedule annexed, or which may be remaining, not in the schedule annexed, but unbequeathed, for her sole use and benefit.

"5th. I give and bequeath the sum of one thousand dollars each to the San Francisco (Protestant) Orphan Asylum, and the Ladies' Relief and Protection Society of San Francisco; also, one thousand dollars to my uncle, John H. Pearsol, of

Lancaster, Pennsylvania; and one thousand dollars to my niece, Grace (daughter of my sister Adaline), the latter sum to be placed out securely until she attains her lawful age (together with the interest accruing on the same) when she shall receive the said sum, principal and interest, for her sole use and benefit; but, in case of her death, the same to go to her mother, my sister Adaline. I also give and bequeath to my mother and sister Adaline, and brother Josephus, one thousand dollars each; also, one thousand dollars each to my brothers, J. Milton and Theodore.

"6th. I appoint as my executors to this my last will and testament, my wife, and my brothers J. Milton and Theodore, either or all of them to serve as they may wish, without the necessity of giving bonds or security whatever, as I have implicit faith in their integrity."

At the time of the execution of this will the testator had only the two children, Albert and Walter, named therein. During the next ten years four more sons were born to him, and on March 11, 1874, as has been stated, he executed a codicil to his will reading as follows:—

"My sons Edgar, Arthur, Oscar and Jerome, being born to me since the making of the foregoing will, I hereby further will that they share and share alike with their brothers Albert and Walter in all properties held by me at the time of my death, and I hereby revoke the 2d clause of my will bequeathing to my brothers that property known as Nos. 510 and 512 Clay Street, between Montgomery and Sansome streets, San Francisco, and that it be placed for distribution among my sons when the youngest becomes of twenty-one years of age, like my other property mentioned herewith: All those certain parcels of land, with improvements, in south line of Washington Street, between Battery and Front streets, 20 feet x 60 feet deep, known as No. ——. Also, southwest corner of Sansome and Washington streets, 45 10-12 feet x 67 feet; also, northeast corner of Powell and Filbert streets, 68 9-12 feet on Powell by 137 feet on Filbert Street; also, southeast corner of Powell and Jackson Streets, 48 feet on Jackson by 90 on Powell Street; also, lot on Broadway Street known as No. 729, 21 by 137½ feet, together with all real estate I may hereafter accumulate, as well as moneys at interest, etc., not otherwise appropriated.

"I also substitute my brother-in-law, Mr. R. B. Dallam, to act in place of my brother J. Milton Painter, as administrator to my will, without his giving bonds, etc. I also revoke clause 4th of this will and direct that my wife share with my sons, and they with her in all property, she one half and they all the other one half equally among them."

After the execution of the codicil and prior to the death of Jerome B. Painter a seventh son, Eugene, was born.

From the bill of exceptions, it appears that in a prior proceeding between the same parties the superior court made a decree (which has become final) construing this will and codicil. In any consideration that is now to be given to the terms of these instruments, the matters thus adjudicated are to be taken as conclusive, and to this extent the question before us is limited and narrowed. We shall point out hereafter the portions of that decree which have a bearing on the present controversy.

The legacies payment of which was sought by the appellants are those mentioned in paragraph 5th of the will, and the proportion of the rents bequeathed by paragraph 3d to the testator's mother, brother, and sister. The petitioner, Cochran, claims as assignee of John H. Pearsol. It is admitted here, although it was in issue in the lower court, that at the time of the hearing there was not in the hands of the executrix and executor sufficient personal property to pay the legacies bequeathed by paragraph 5th, and the main question for determination is whether these legacies are payable out of the real estate devised by the will and codicil, and distributed by the decree of partial distribution appealed from. If the legacies given by paragraph 5th of the will are chargeable against such real estate, the order denying the application for their payment and the decree distributing such real estate to the devisees are alike erroneous. (The rent bequests of paragraph 3d stand on a different ground and will be separately discussed.)

The contention of the respondents is that the real estate was specifically devised to them by the codicil, and that therefore such real estate is not chargeable with the payment of general legacies. As to how far, if it all, specific legacies or devises can be made to pay general legacies, the provisions of the Civil Code are by no means free from doubt. Section 1357 defines

the various kinds of legacies,—to wit, specific, demonstrative, annuities, residuary, and general. Section 1360 provides: "The property of a testator, except as otherwise specially provided in this code and the Code of Civil Procedure, must be resorted to for the payment of legacies in the following order: 1. The property which is expressly appropriated by the will for the payment of the legacies. 2. Property not disposed of by the will. 3. Property which is devised or bequeathed to a residuary legatee. 4. Property which is specifically devised or bequeathed." Taking this section alone, it would seem that, in the absence of any property embraced in one of the three classes first named in the section, property specifically devised or bequeathed should be resorted to for the payment of general legacies. Such rule would, however, be entirely contrary to the rule at common law, and in force, so far as we know, in all American jurisdictions. The respondent contends that the fourth subdivision of section 1360 should be read "Property which is *not* specifically devised or bequeathed," the word "not" having been, as is claimed, omitted by inadvertence. The point was discussed by this court to some extent in *Estate of Neistrath,* 66 Cal. 330, [5 Pac. 507], and the purport of the decision seems to be that, reading section 1360 together with sections 1357, 1359, and 1362, the effect of the various provisions is to make specific devises and specific legacies free from any contribution to the payment of general legacies. The question has not again been brought to the attention of this court, except in *In re Ratto's Estate,* 149 Cal. 552, [86 Pac. 1107], in which it is said: "In the *Estate of Neistrath,* 66 Cal. 330, [5 Pac. 507], the court leaves it somewhat doubtful whether by said section 1360 the legislature intended to subject specific devises to the payment of general legacies; but we need not consider that question here." While, as was said in the Ratto case, the former decision did leave the question somewhat doubtful, we think it was intended by the court in the Neistrath case to hold specific legacies or devises not chargeable with the payment of general legacies, and shall adhere to this construction of the code. It may be remarked that in this case it is expressly conceded by the appellants that "if this real estate is specifically devised these general legacies found in clause 5th of the will cannot be charged upon such real estate."

Section 1357 of the Civil Code declares that "A legacy of a particular thing, specified and distinguished from all others of the same kind belonging to the testator, is specific; if such legacy fails, resort cannot be had to the other property of the testator." While this definition refers in terms only to legacies, and not to devises, we have no doubt that in this state the question whether a testamentary gift is specific or general is to be determined by the same tests where the subject of the gift is real as where it is personal property. It is true that in England devises of real estate have always been regarded as specific. This resulted from the early statutory rule that a will disposed only of the real estate owned by the testator at the date of the execution of the will. And while the English courts have continued to treat all devises as specific, notwithstanding the later statute whereby wills may pass all real property owned by the testator at the time of his death (18 Am. & Eng. Ency. of Law, 2d ed., p. 720), it has generally been held in the United States that statutes making wills speak as of the time of the testator's death have the effect of permitting devises to be general, at least as to after-acquired property. (Ibid.; *Kelly* v. *Richardson*, 100 Ala. 584, [13 South. 785].) Such statutes are in force in this state, (Civ. Code, secs. 1312, 1332), and the legislature has in other ways evidenced its intent that real and personal property taken under a will should stand on the same footing. By sections 1358, 1359, and 1360 of the Civil Code, the property of decedents is made liable for the payment of debts and legacies, regardless of its character as real or personal. Sections 1359 and 1360 both speak of property "specifically *devised* or bequeathed," and in using the term "specific" indifferently, as applied to realty and to personalty, must be taken to use it in the same sense as to both.

A specific legacy (or devise), then, is one of "a particular thing [or parcel of land], specified and distinguished from all others of the same kind belonging to the testator." That the codicil undertakes to devise particular parcels of land, "distinguished from all others of the same kind belonging to the testator," would seem to admit of no doubt, since the various parcels devised are definitely and particularly described. If the devises covered merely the land so described, the appellants would hardly undertake to contend that such

devises were not specific. They rely, however, on the words immediately following the description, — i. e. "together with all real estate I may hereafter accumulate, as well as moneys at interest, etc., not otherwise appropriated." The argument is that this, read in connection with the last clause of the codicil, is in effect a gift of the residue to the wife and sons of the testator, and that therefore the particular enumeration of certain pieces of property which form a part of the residue does not make the gift of those parcels specific. That the effect of the codicil is to bequeath and devise the residue of the testator's estate to his wife and sons is, if not entirely clear upon the face of the instrument, conclusively settled as to all parties to this controversy by the former decree construing the will and codicil. In that decree we find it adjudged, *inter alia,* that "all the property of said deceased subject to his testamentary disposition at the time of his death, not in the said will and codicil otherwise specifically provided for, is, by the terms of said will and codicil, divided between his wife and sons." And no doubt it is the general rule that the enumeration of specific articles in a residuary clause will not necessarily make the bequest specific as to such articles. (18 Am. & Eng. Ency. of Law, 2d ed., p. 716.) This rule has been repeatedly applied to wills which purported to give certain specified property, "and all the rest and residue of my estate, etc." (*Le Rougetel* v. *Mann,* 63 N. H. 472, [3 Atl. 746]; *England* v. *Vestry,* 53 Md. 466; *Walker's Estate,* 3 Rawle, 229.) The same rule applies where the gift is of "the rest and residue of my estate, including all my household furniture, ornaments, books, pictures, and utensils." (*In re Martin,* 25 R. I. 1, [54 Atl. 589]. See, also, *Stehn* v. *Heyssen,* 124 Wis. 583, [102 N. W. 1074].)

On the other hand, a different conclusion has been reached where language was used indicating an intent to separate a specific gift from a residuary gift to the same legatee or devisee. In *Clark* v. *Butler,* 1 Meriv. 304, the testator bequeathed all his household lease in London and all his household goods and furniture at Sawbridge, "and as to all my plate, linen, china, pictures, live and dead stock and all the residue of my goods, chattels and personal estate," to a legatee. It was held that the gift was specific as to the lease in London and the household goods and furniture at Saw-

bridge. In *Fitzwilliams* v. *Kelly*, 10 Hare, 866, the testatrix
devised certain leaseholds and her shares in the Chelsea water-
works, "and also her stocks, funds and securities for money,
and all other her personal estate and effects whatsoever."
The leaseholds and shares were held to be specifically be-
queathed. In *Langdale* v. *Esmond*, 4 Ir. Eq. 576, the will
gave the "remainder of my books and paintings, together
with the residue of my property," and the gift of the books
and paintings was treated as specific. (See 18 Am. & Eng. Ency.
of Law, 2d ed., p. 716, and *Hill* v. *Hill*, 11 Jur. (N. S.) 806.)
In *Dauel* v. *Arnold*, 201 Ill. 570, [66 N. E. 846], the will con-
tained the following clause: "Also all my bank stocks and
effects in the State Bank of Colfax, valued at $6,300, and
also including the several sums due me, or which may be due
from my children as heretofore specified, or which may be
due me from any sources whatever, and any other property
or effects, real or personal, of whatsoever kind, which I now
have or may have, I devise and bequeath to my wife. . . ."
The court held that the legacy of the bank stock was specific,
saying, "the gift is specific if the specific things are so enu-
merated as to distinguish them from the residue, as by the
use of such words as 'together with,' 'as well as,' 'and also,'
and the like."

In short, the question is purely one of construction. The
testator's intent is to be determined in each case from a con-
sideration of the particular language employed. A bequest
or devise of the residue of an estate is general, because such
residue is not ascertainable at the time the will is made. The
fact that, in giving such residue, the testator describes, as
included in it or forming a part of it, certain specific prop-
erty owned by him, does not alter the character of the residu-
ary gift. But where the language used indicates an intention
to make two distinct gifts,—one of specific property and the
other of the residue,—the specific legacy or devise is not ren-
dered general by the fact that there is a gift of the residue to
the same person. We think the language of this codicil brings
it within the principle of the cases last cited. The testator
indicated, as plainly as language could do it, his intention
to give to his wife and his sons the particular parcels of real
estate described in the codicil. That he added to this gift
the words "together with all real estate I may hereafter

accumulate," etc., did not make the preceding enumeration a mere part of the residuary gift. On the face of the will and the codicil alone, the court below rightly construed the devises of the real estate described in the codicil as specific. In this connection we may notice the finding of fact that at the time of the execution of the codicil the decedent owned sufficient personal property to pay all the general legacies mentioned in the will and codicil. This finding is attacked as unsupported by the evidence. The fact declared in it is merely probative. Whether or not the testator, when he made his will, had sufficient personal property to satisfy the general pecuniary legacies, without resort to the land described in the will, is a circumstance bearing on his intent. If he had no such property, there would be less reason for holding the devises specific, since it will not be presumed that he intended to make general legacies which could not be paid except out of the realty, and then devised the realty so that it could not be applied to the payment of those legacies. The ultimate fact in issue, however, is whether or not the devises are specific, and it may well be that the finding as to this fact could stand, even though it should be held that there is no evidence to support the probative finding as to the personal property owned by the testator at the date of the codicil. We are of opinion, however, that the evidence justified the conclusion reached by the court regarding the testator's property. He owned, at the date of the codicil, a one-half interest in the firm of Painter & Co. We shall not undertake to review the complicated mass of testimony that was given regarding the business and condition of this partnership. The relations between the estate of the decedent and the surviving partner have been the subject of litigation which has lasted many years. It is enough for the purposes of this case to say that, if we concede the correctness of the contention of appellants that Jerome B. Painter was largely indebted to the firm on what is called in the record the "school land account," there was still sufficient evidence to justify the view that his share of the partnership assets was enough to pay this indebtedness and leave a surplus which would be adequate to discharge the legacies given by paragraph 5 of the will.

The court found that all the real property of which the decedent was seized or possessed, or in which he had any

interest, except that owned by the firm of Painter & Co., is particularly described in the will. It is urged that the evidence shows that the decedent owned lots 1399 and 1401 in "Gift Map No. 2," Harvey's Addition to the city and county of San Francisco. But there was also evidence justifying the conclusion that this property, although standing in the name of J. B. Painter, was in fact owned by the firm of Painter & Co.

It is claimed that the court erred in denying to Adaline Mininger and to Josephus Painter any right to participate in the rents derived from the building Nos. 318, 320, and 322 Clay Street. It is argued that the gift of a share of these rents, in paragraph 3 of the will, was specific, and that it had been conclusively determined by the former decree construing this will that the codicil did not revoke the *specific* legacies given by the will. But whether or not this gift of a portion of the rents was specific, and whether or not it was revoked, it was, by the terms of paragraph 3, merely a gift of such rents until the testator's sons Albert and Walter should reach the age of twenty-one years. Both were over this age when the testator died, and hence this gift to Josephus Painter and to Adaline Mininger never took effect.

The appellants assign as error the ruling of the court admitting in evidence a paper dated 1863, shown to be in the handwriting of the decedent, and purporting to contain a statement of the assets and liabilities of Painter & Co. Doubtless such paper was not competent evidence of the condition of the firm's affairs, but it appears to have been offered merely for the purpose of showing the belief of J. B. Painter as to the *status* of the business. If his belief regarding his property was material,—which does not seem to be disputed by appellants,—we think his declaration, written or oral, was properly admitted as some evidence of such belief. (16 Cyc. 1183. See *Kyle* v. *Craig,* 125 Cal. 107, [57 Pac. 791].) The ruling admitting in evidence a "Schedule of Personal Property," dated 1864, is attacked, but, as no exception was taken, the action of the court cannot be reviewed. Some other points are made on the admission of testimony, but none of them, even if well taken, is of sufficient importance to justify a reversal.

The orders appealed from are affirmed.

Shaw, J., Angellotti, J., Henshaw, J., McFarland, J., and Lorigan, J., concurred.