## Ballinger's Devisees v. Ballinger's Adm'r et al.

(Decided Nov. 24, 1933.)

G. MURRAY SMITH for appellants.

BURNAM & GREENLEAF and D. ANDREW SHEARARD for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

William H. Ballinger, a citizen and resident of Madison county, died testate in 1931. His will was

holographic and was prepared and subscribed by him on September 26, 1928. Omitting date and signature it reads: "This statement in case of my death. All property willed to me by my deceased wife, Myrtle J. Ballinger is to go to Stanley M. Johnson, our boy, also $2,000.00 of my insurance to Stanley. My place in Rockcastle is to go to my brother George. $1,500.00 of my insurance is to go to my parents. $1,000.00 to the Unevangelized Mission Tribes in Africa for Miss Alma E. Doering Mission Work. The balance of my estate all property inclusively to my people. In case of accidental death, all above willed money is to be doubled to each beneficiary."

Following testator's signature he appended a list of personal assets which was also in his handwriting and which says: "$2,000.00 Endowment Penn Mutual, $1,600.00 U. S. Bonus. $2,000.00 United Benefit. $1,000.-00 in bank. Double in case of Accident." At his death the cash that he listed in bank ($1,000.00) had been reduced to only $19, and the "United Benefit" certificate of $2,000.00 proved to be entirely worthless. Stanley M. Johnson, the devisee mentioned in the will, was not the son of the testator, but who was, perhaps, the son of his wife by a former marriage, the latter's death preceding that of the testator who was only foster parent to that devisee.

It was soon learned by the administrator, with the will annexed, that the only available personal assets of the estate, except the $19 deposit account in the bank, consisted in the insurance policies and other benefit certificates that testator had contracted, and which realized only $4,236.43. The indebtedness, including funeral expenses, cost of administration, and attorney's fees, reduced the net amount for cash distribution among the beneficiaries in the will to $3,150, and when that situation developed, the administrator filed this equity action in the Madison circuit court against the devisees and all other parties interested, and sought the judgment of the court construing the will and defining his duties thereunder, and all because of what he conceived to be doubts cast thereon by the language of the will, with respect to the order in which the legacies contained in it should be abated after the debts and costs of administration were paid.

The property that the testator derived from his

deceased wife consisted entirely of two small parcels of real estate near Berea, and the "place in Rockcastle" was a small farm containing only about eight acres, located in that county. The devisees, Stanley M. Johnson, George Ballinger, and the parents of testator, in their respective pleadings correctly contended that the real estate devises made in the will were specific ones of that class of property, and were preferred as against reduction for necessary abatements over the bequests of personal property, although the latter might also be specific ones of that class of property. They futhermore contended that the $2,000 given to Stanley M. Johnson and the $1,500 to testator's parents by his will were what is known in the law as "Demonstrative" legacies and that the gift of $1,000 to the Unevangelized Mission Tribes of Africa (hereinafter referred to as the mission), was only a general legacy and should first be exhausted in the abatement process before either of the other two money ones should be touched. The mission contended to the contrary in its pleadings, and upon final submission the court adjudged that all three of them should share the abatement in the proportion that the respective amounts bore to the net sum to be distributed, and complaining of that judgment the foster son and the parents prosecute this appeal.

A specific legacy or devise is the gift by will of a specific article or piece of property capable of identification. As to personalty, it may be corporeal, an illustration of which would be the devise of a piano; or it may be one of incorporeal personalty, provided the amount is fixed and is directed to be paid out of a certain and specific fund. In the latter event the gift is designated as a "Demonstrative" one, and which is defined to be a legacy "of quantity payable out of a particular fund, primarily, and out of the general estate if the fund designated proves insufficient. * * * It must appear in the first place that the testator intended to make an unconditional gift in the nature of a general legacy, and secondly, the bequest must indicate the fund out of which it is payable." If that fund is not sufficient to pay all of the legacies charged in the will against it, and the deficit will have to be made up out of the general estate, the legacy becomes in its nature both a general and specific one. See 40 Cyc. 1870, 1871. That text contains the general and universally applied rules

applicable to the subject that are contained in other text-writers, and as approved and applied by the courts generally. But those rules are, like most others applicable to the interpretation of wills, compelled to surrender to the intention of the testator as expressed by him in his entire will, since such intention, if not contrary to law, is the overshadowing rule for the interpretation of wills, and which has been so many times announced by all courts, including this one, that we deem it unnecessary to encumber the opinion with the citation of cases in which it was done. See 40 Cyc. 1871, and cases cited in notes.

As a general rule, (unless modified by statute) and in the absence of an intention to the contrary expressed in the will, devises of all real estate are first exonerated from contributing to an abatement when the latter becomes necessary, and next in line to share such immunity are specific legacies of corporeal personalty, and then follows demonstrative or specific legacies of incorporeal personalty if the will be such as to render them of that character and nature. Next in line of preferment are general legacies of personal property, leaving residuary legacies as the primary fund to share such abatement. But if there be no such, or if it is insufficient for that purpose, then general legacies of personal property must share their pro rata of the deficit, and if all of them, or (more appropriately) the fund out of which they are to be paid, is exhausted without satisfying the amount of the necessary abatement, then demonstrative legacies should share their pro rata portions, and if their combined amount is insufficient for the purpose, then specific legacies of corporeal personal property should be appropriated for the purpose, and if not sufficient, then specific devises of real estate may be resorted to.

Conversely stated, the general rule is, in the absence of a contrary intention appearing in the will, or modification by statute, that residuary gifts are to be first appropriated in satisfaction of abatement deductions; and if they are insufficient for that purpose, then resort is to be had to general legacies of personal property, and if they are insufficient, the next available class for that purpose is specific gifts of personal property, and lastly specific devises of real estate. If, however, any particular class of gifts are not entirely con-

sumed in satisfying the abatement, then all gifts within that class should be ratably reduced in proportion that the entire amount of them not consumed bears to their total amount.

Authority for the above statements is found in the text of 40 Cyc. 1902, subsection 9; 1904, subsection b; 1909, subsection c; and 1910, subsection d. Domestic cases supporting the above enumeration of the order in which legacies should be paid, and in which necessary abatements should be borne in accordance with the cited text, are: McCampbell v. McCampbell, 5 Litt. 92, 15 Am. Dec. 48, Alexander v. Waller, 6 Bush, 330, and Louisville Presbyterian Theological Seminary v. Fidelity Trust & Safety Vault Company, 113 Ky. 336, 68 S. W. 427, 24 Ky Law Rep. 244. An additional substantiating text is found in 28 R. C. L. 300, sec. 279. The modification of that rule contained in section 2073 et seq., of our statutes do not affect the question here. Following the priority rule of exemption against abatement, as so announced and applied, it is the contention of counsel for testator's foster son, and for his parents, that the gift to the mission should first be exhausted and exclusively applied to the necessary abatement amount, since, as they contend, it is a general bequest and the cash legacies bequeathed to their clients should be preferred, as against the one made to the mission, upon the ground that the legacies to their clients are demonstrative and specific ones, payable out of the proceeds of a designated fund which was that of testator's "insurance money." Counsel for the mission contend otherwise, and which is based upon two arguments (a) that the language of the entire will clearly indicates a contrary intention on the part of the testator and (b) that the money legacies to the foster son and to the testator's parents are not in reality demonstrative or specific ones, since a necessary element to make them so is wanting, i. e., that they are not made payable out of the necessary "specific fund," but only out of the aggregated amount collected from all of the insurance policies carried by testator. In other words, their contention is that the necessary specific fund in this case that is charged with the payment of such legacies, in order to make them demonstrative ones, is absent from the will, because they were made payable out of the general aggregated fund of all of the insurance polic-

ies, and not out of any specific policy, and which they contend was and is necessary in order to convert them into demonstrative legacies. We are not inclined to agree with that argument. However, we find it unnecessary to further discuss it, since we are convinced that argument (a) is sound and should be sustained.

We have hereinbefore said that in construing wills the intention of the testator as gathered from the language of the entire instrument should prevail if not forbidden by law. Applying that rule to the will involved here it will readily be seen that it was the intention of the deceased, William H. Ballinger, that his three monetary bequests (i. e. $2.000 to his foster son, $1,500 jointly to his parents, and $1,000 to the mission) should stand upon a par in the order of preferment and payment. It would not be transgressing the rules applicable to the construction of wills to read into the one of the testator herein a direction that the $1,000 to the mission should also be paid out of the proceeds of his insurance, when he said: "$1,500.00 of my insurance is to go to my parents. $1,000.00 to the Unevangelized Mission Tribes in Africa." Their close connection is quite persuasive (and especially when viewed in the light of the fact that the insurance proceeds constituted practically all of the testator's personal estate) that he meant for the latter gift to also be paid out of the same fund as the two previous ones. However, the question to our minds is put to rest by the last clause or sentence in the will saying: "In case of accidental death, all above willed money is to be doubled to each beneficiary." It is conceded that his insurance policies contained clauses of double liability in case of accidental death, and, therefore, in that event he directed that the amounts of his three legacies of money (which he contemplated should be paid by proceeds of his insurance) should be doubled to each beneficiary, and which latter excerpt from the will embraced the mission equally with the individual legatees to whom he gave money. Without that clause in the will, and without anything else indicating to the contrary, the argument of learned counsel for appellants would be much more persuasive, and in such event it is probable that the judgment would have been different. But the language of the will being as it is, and it leading unerringly to the conclusion that the testator wanted all of his

legatees to whom he gave specified amounts of money to share equally and ratably, with no preference given to either of them, the trial court could scarcely have rendered any other judgment than it did.

Being so convinced, the judgment is affirmed.