# Howe et al. v. Howe's Ex'x et al.

Oct. 14, 1941.

Stites & Stites and William Karraker for appellants.

Stoll, Muir, Townsend & Park, Wallace Muir and John L. Davis for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This appeal involves the construction of the last will and testament of Frances Milward Howe. The will in question is as follows:

"I, Frances Milward Howe, a resident of Lexington, Kentucky, being of sound mind, do this third day of December, 1937, make this my last will and testament.

"After all debts are paid, I leave to my mother in law, Mrs. Carl Howe, the sum of One Thousand Dollars. To Florence Oswald of Oak Park, Illinois, I leave One Thousand Dollars, also my diamond engagement ring.

"To Alice and Cynthia May, daughters of my cousin, John W. May, of Louisville, Kentucky, I leave One Thousand Dollars each.

"To my friend, Louise Schoyer Bullard, I leave One Thousand Dollars.

"To my nephew, Hugh Emmett Milward, I leave my property located at the corner of South

Broadway and Maxwell Streets, Lexington, Ky. now occupied by the Great Atlantic and Pacific Tea Co.

"To Ann Race Milward, my sister in law, I leave my house located at 1021 North Euclid Ave., Oak Park, Illinois.

"To Hugh Emmett Milward and Ann Race Milward I leave all my personal property consisting of antique furniture, stocks and bonds and money invested with Travelers Life Insurance Co. and Massachusetts Mutual Life Insurance Co., to be divided equally.

"I desire Ann Race Milward to be the executrix without bond.

"This will is written in my own hand writing and needs no witness."

In approaching our discussion of this will and its several provisions which bear directly upon the question raised by the appeal, we take note of certain undisputed facts as to the relation of the testatrix to the two groups of beneficiaries mentioned in her will and the character and quantum of her estate at the time of writing her will and at the time of her death occurring some eighteen months thereafter, out of which the bequests were directed to be paid.

The testatrix' holographic will was written by her in December, 1937, some eighteen months prior to her death on May 6, 1939, when she was a childless widow, some sixty-seven years of age.

At the time of writing her will and also that of her later death, textatrix owned two pieces of real estate, one a rented storehouse in Lexington, Ky., and the other a residence property in Oak Park, Ill.

She also owned some antique furniture, certain stocks and bonds and some money invested with or in policies she held in the Travelers Life Insurance Co. and the Massachusetts Mutual Life Insurance Co.

By the first of the three dispositional clauses of her will, she bequeathed, after her debts were paid, $1,000 each to the mother of her deceased husband, Mrs. Carl Howe, to his aunt, Florence Oswald, and to his sister, Cornelia Howe, and also specifically bequeathed to the

latter her diamond engagement ring. By the will's second paragraph, she likewise bequeathed $1,000 each to Alice and Cynthia May, daughters of her cousin, John W. May, and by its third paragraph she bequeathed the like amount to her friend, Louise Schoyer Bullard.

By the fourth and fifth clauses of her will, she specifically bequeathed to her nephew, Hugh Emmett Milward, the only child and infant son of her deceased brother, her store property in Lexington, Ky., then "occupied by the Great Atlantic and Pacific Tea Co." and to Ann Race Milward, the widow of her deceased brother and mother of his infant son, Hugh Emmett Milward (to whom she had devised the storehouse property), her residence property in Oak Park, Ill.

Further, by the sixth clause of her will (over which the present controversy as to whether it makes a specific or only a residuary bequest has arisen) she bequeathed to Hugh Emmett Milward and his mother, Ann Race Milward, "all my personal property consisting of antique furniture, stocks and bonds and money invested with Travelers Life Insurance Co. and Massachusetts Mutual Life Insurance Co., to be divided equally" and by the concluding clause of her will directed that Ann Race Milward (her sister-in-law and mother of her infant nephew, Hugh Emmett Milward) be appointed executrix without bond to administer her estate.

Upon testatrix' death, occurring some eighteen months after her writing of this will, it was by the orders of the Fayette county court duly admitted to probate and the appellee Ann Race Milward (now Ann Faulkner) was appointed and duly qualified as her executrix under the will and filed this action for its construction and for a declaration of rights as between these two adversary groups of beneficiaries thereunder.

The necessity of bringing this suit was caused by the fact that at the time of testatrix' death she left approximately but $200 in cash, the real estate mentioned in the will, the antique furniture, stocks and bonds and money invested with the two named insurance companies, which (except the $200) were all devised by testatrix to her sister-in-law, Ann Race Milward, and infant nephew, Hugh Emmett Milward.

Inasmuch as the debts and costs of administration exceeded the $200 left by testatrix, the executrix was re-

quired to pay the excess amount of the debts and costs of administration out of the money invested with the insurance companies.

It thus developing that there was not sufficient cash in the estate to pay the general legacies of $1,000 bequeathed to each of the six beneficiaries named in the first three dispositional paragraphs of the will, a controversy arose between such group of beneficiaries and the executrix, Ann Race Milward, and her infant son, Hugh Emmett Milward, to whom testatrix bequeathed by the sixth clause of the will all her personal property, consisting of the antique furniture, stocks and bonds and money invested with the two named insurance companies, as to which of these legacies made between the two groups of beneficiaries should be abated.

In this suit brought the executrix set out in her petition the death of testatrix, the provisions of her will and that plaintiff, Ann Faulkner, had duly qualified as executrix thereof. The will was inserted in full, its provisions discussed and the existence of a controversy was alleged to have arisen between the plaintiffs and defendants as to the construction of clause 6, together with the respective contentions of the parties as to whether it bequeathed a residuary or specific estate to plaintiffs.

The petition concluded with a prayer for a declaration of rights of the two groups of beneficiaries claiming thereunder.

Appellants (defendants below) filed a demurrer to the petition, which was overruled; whereupon they filed an answer and counterclaim containing two paragraphs, the first of which was a traverse and the second, after setting out the provisions of the will and the construction they sought to be given it, pointed out the condition of testatrix' estate at the time she wrote it; described the family and friendship ties existing between testatrix and appellants, which it was averred made them the natural objects of her bounty; that when she wrote the will she was a childless widow, whose only income was from her rentals and securities, all of which she regularly consumed in living expenses, and that she never had at any time more than $1,000 cash on hand and because of which they further prayed that the pecuniary bequests or general cash legacies made them by the first three

paragraphs of the will be paid from proceeds derived from the sale of some of the personal estate devised appellees by the sixth paragraph of the will, as testatrix knew, when writing the will, that only by so doing could these six cash bequests made them be paid and did not intend that they be nugatory.

Plaintiffs (appellees) thereupon moved to strike certain portions of the answer and counterclaim they deemed to be conclusions pleaded and filed a general demurrer to the second paragraph thereof. The court overruled the motion but sustained the demurrer.

Appellants declining to plead further, the court rendered a judgment construing the will and holding that the devise to plaintiffs of her stocks and bonds, antique furniture and money invested in the two insurance companies was a specific devise and that the general legacies of $1,000 each bequeathed to the six named beneficiaries were to abate. The memorandum opinion of the court, on which the judgment was based, was filed as a part of the record.

The one question presented upon this appeal arises from the controversial clause 6 of the will reading:

"To Hugh Emmett Milward and Ann Race Milward I leave all my personal property consisting of antique furniture, stocks and bonds and money invested with Travelers Life Insurance Co. and Massachusetts Mutual Life Insurance Co."

Appellants contend that the court erred in construing this sixth clause of the will in controversy as specifically bequeathing all testatrix' property to the appellees, insisting that it was a residuary clause and, as such, subject to a pro tanto abatement for the purpose of paying the six cash bequests made them by the first three clauses of the will.

Preliminary to our discussion of this one precise question here upon appeal, we deem it not improper to here mention certain accepted rules and principles of law, to which we must turn as here applicable for our guidance in arriving at a sound and proper determination of this question before us.

These principles and rules may be stated as being, first, that the right to make a will is not a natural right, but one wholly of statutory origin and that the purpose

of the statute of wills was to give an owner of property, having testamentary capacity, the right to dispose of it according to his own will and wish and contrary to the usual rules of inheritance fixed by the statute of descent. Purdy's Adm'r v. Evans, 156 Ky. 342, 160 S. W. 1071.

Such being the right of the owner of property to dispose of it according to his own will, the cardinal principle of construing a testator's will is to effectuate his intention, which is to be drawn from the four corners of his will. O'Rear v. Bogie, 157 Ky. 666, 163 S. W. 1107. Also it is one of the primary rules of construction that a will should be so construed as to uphold each item or section thereof, where this can be done without doing violence to the remaining section or sections. Allen v. Allen, 108 S. W. 250, 32 Ky. Law Rep. 1157.

However, while it is true that such is the rule of construction of wills, having as its main objective the ascertaining and effectuating of the intention of the testator, yet, in seeking his intention, we must construe the language of the will in the light of the uniform rules of interpretation adopted by this court.

The settled rule of this jurisdiction, adopted in cases involving the problem of abatement of legacies, is that the order of their abatement is as it is laid down in the case of Ballinger's Devisees v. Ballinger's Adm'r, 251 Ky. 405, 65 S. W. (2d) 49, 51, where we said:

"The general rule is, in the absence of a contrary intention appearing in the will, or modification by statute, that residuary gifts are to be first appropriated in satisfaction of abatement deductions; and if they are insufficient for that purpose, then resort is to be had to general legacies of personal property, and if they are insufficient, the next available class for that purpose is specific gifts of personal property, and lastly specific devises of real estate. If, however, any particular class of gifts are not entirely consumed in satisfying the abatement, then all gifts within that class should be ratably reduced in proportion that the entire amount of them not consumed bears to their total amount."

See further the statement of the rule, in accord with the above as to the abtement of legacies, found in Section 282, 28 R. C. L., page 302, which is as follows:

"In the event of a deficiency of assets a specific

legacy will not abate for the benefit of a general legatee, but general legacies will abate in order to pay the specific legacies in full, even if this involves the complete obliteration of the general legacies. If a partial abatement is necessary the abatement of general legacies will be pro rata."

Such being the well-settled rule of abatement, our next inquiry must be as to whether or not the chancellor erred in construing this clause of the will in controversy as making a specific devise rather than as being merely a residuary gift out of which the six general legacies bequeathed the appellants should be satisfied, it appearing that the cash or otherwise undisposed of personal property was insufficient to pay the general legacies made.

This court, in the case of Ruh's Ex'rs v. Ruh, 270 Ky. 792, 110 S. W. (2d) 1097, 1103, defined both specific and general legacies and endeavored to point out the distinction between them as follows:

"It may be well at the outset to observe the nature and classes of legacies, which consist of specific, general and demonstrative. A specific legacy is said to be a bequest of a particular thing, or a specified part of testator's estate, which is so described as to be capable of identification from all others of the same kind. The testator must intend that the legatee have the very thing bequeathed, not merely a corresponding amount in value or like property.

"'A specific devise, or specific gift, is a gift by will of a particular thing, or specified part of the testator's estate, which is capable of identification from all others of the same kind, and which may be satisfied only by the delivery of the particular thing.' 69 C. J. 921.

"A general legacy is one that may be satisfied out of the general assets of testator's estate, without regard to any particular fund, thing or things.

"'The legacy is one of quantity, either of money or other chattels, not in any way separated or distinguished from all others of like kind.' 69 C. J. 922. * * *

"The character of the particular legacy depends upon the intention of a testator as gathered

from the language of the will, construed as a whole, in the light, if necessary, of surrounding circumstances. Applying that rule, we see that the testator bequeathed all of his 'stocks, bonds, notes and other securities' in his safety box at the Security Trust Company, which definitely identified said securities as being in a particular place and container."

Also, as said in Section 272, page 296, 28 R. C. L., in defining the character of a residuary estate, which appellants contend is the nature of the bequest here involved:

"The residue of an estate may be defined as that which remains after discharging all legal and testamentary claims on the estate or as that which is left after the payment of charges, debts, and particular legacies. While no particular form of words is requisite to constitute a residuary legatee, it must appear to have been the intention of the testator that the residuary legatee should take the residue of the estate after payment of debts, and meeting all the appointments of the will. A general residuary clause operates to transfer to the residuary legatee such portion of his property as the testator has not effectively disposed of by the will, and also includes any property or interest in the will which, for any reason, eventually falls into the general residue."

Guided by these generally accepted definitions, both defining and distinguishing the two forms of legacies, our next inquiry is as to whether or not testatrix has here, by the language employed in the clause in question, intended to thereby give the appellees merely a residuary legacy, by reason of her having used the expression, in making the bequest, that she thereby gave to her sister-in-law and her nephew "all my personal property," notwithstanding that at the same time and in the same clause she confined and restricted the scope of the bequest to her antique furniture, stocks and bonds and money invested in the two named insurance companies, of which her personal property consisted.

It appears to us that the gift so specified and described is not made the less effective as a specific bequest by its being the modifying phrase of "all my personal property." In fact, by this clause testatrix states

her intention and will to be to leave *all* her personal property to the appellees, which in itself relieves the need for a more specific description of the particular items or parts thereof to distinguish them from other items and parts of her personal property, for the reason that the language of her bequest, in giving appellees *all* of the named articles and classes of property described, does itself serve to designate and identify the things or property thereby given, so as to distinguish them from all others, regardless of the fact that the property so described and given constituted all of her personal estate.

It appears to have been the chancellor's view, as we infer from his construction given this clause of the will, that the language employed by testatrix in making the bequest was in effect practically the same as if she had omitted the expression "I leave all my personal property consisting of antique furniture, stocks and bonds and money invested with Travelers Life Insurance Co. and Massachusetts. Mutual Life Insurance Co." to her nephew and sister-in-law and had substituted therefor a direct bequest to appellees of all her antique furniture, stocks and bonds and money invested in the two insurance companies.

Further it is our view that the language of this bequest of her personal property, specifically describing it, as stated, was quite sufficient to meet the requirements as to what constitutes a specific bequest, as set out supra, defining a specific legacy as "a gift by will of a particular thing, or specified part of the testator's estate, which is capable of identification from all others of the same kind, and which may be satisfied only by the delivery of the particular thing."

It is further our opinion that the propriety of the learned chancellor's construction given this clause in question, adjudging it to be a specific devise, is not effectively challenged by appellants' contention that it should be construed, as intended by testatrix, as giving appellees but a residuary estate in the personal property therein bequeathed, upon the ground that such construction thereof is called for in order to comply with the general rule that a will should be construed, if possible, so as to give effect to every part thereof; that is, that effect should be given to every word and clause, if not inconsistent with the general intent of the whole will when taken together. Allen v. Allen, 108 S. W. 250, 32 Ky.

Law Rep. 1157; Lewis v. Reed's Ex'r, 168 Ky. 559, 182 S. W. 638, Ann. Cas. 1917D, 1155; St. Matthews Bank v. De Charette, 259 Ky. 802, 83 S. W. (2d) 471, 99 A. L. R. 1146.

Appellants' contention is that the chancellor, in construing the clause in question as a specific bequest rather than a residuary one, did not observe the rule of construction stated, in that, by his construction of this clause, he rendered nugatory and of no effect the general pecuniary bequests made of $1,000 to each of the six appellants.

Conceding that such is one of the rules laid down for the construction of wills, there is also another of equal appeal and force, which is that courts, in construing wills, are to be guided by the language used in ascertaining the testator's intention (Prather v. Watson's Ex'r, 187 Ky. 709, 220 S. W. 532); also, that the intention of the testator as derived from the whole will is the primary object of construction, or, as same was stated in Jones v. Jones' Ex'rs, 198 Ky. 756, 250 S. W. 92:

"The rule is universal that, in arriving at the intention of the testator, the courts should look to all the language which he employed, and, if in so doing his intention can be ascertained, that intention controls, regardless of collateral and subsidiary rules which may be employed in arriving at the intention when it is obscure."

The further rule is stated in Reed v. Williams, 194 Ky. 662, 240 S. W. 391, that:

"The controlling rule of construction of a will is that intention of testator must be ascertained from the instrument as a whole, and in the light of the circumstances and conditions surrounding him at the time of its execution."

Here the circumstances and conditions surrounding testatrix at the time she executed her will and her relationship to the devisees (as same were set out in appellants' answer and admitted upon demurrer) were all properly taken into consideration by the learned chancellor as throwing pertinent light on what the testatrix intended by what she said in this clause of her will, as same appears from the memorandum opinion of the chancellor upon which the complained of judgment was based.

The chancellor found therefrom that testatrix did manifest by her will an intention to properly care and provide for the welfare of her nephew, the infant son of her deceased brother and her only blood relation, even at the expense, if necessary, of all other collateral kin or friends and to such end gave him not only a storehouse, providing an income, and his mother, who was to look after him, a home in which to rear him, but also gave him and his mother her stocks and bonds and money invested in the two insurance companies, as well as her antique furniture, looking to the end of the child's comfort and support.

Such having been by the chancellor found to be the intent of testatrix, in which finding we concur, we conceive his construction of the clause in controversy as being a specific legacy was proper, both as carrying out the evident intention of testatrix and as required by the fair interpretation of its language and that, having so found, he properly rejected applying the technical rule of construction urged by appellants, that he construe the clause as making a residuary bequest, so as to not render nugatory the general legacies given in the earlier dispositional clauses of the will.

We are of the opinion that the chancellor's ruling was proper and therefore his judgment is affirmed.