## Blankenship et al. v. Blankenship et al.

Jan. 20, 1939.

As Modified on Denial of Rehearing Feb. 24, 1939.

E. POE HARRIS and ELDRED E. ADAMS for appellants.

CLYDE L. MILLER, C. F. SEE, JR., and CHESLEY A. LYCAN for appellees.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

Mrs. Minnie Justice died testate, a resident of Lawrence County, on July 21, 1938. She was sixty eight years of age at the time of her death and her husband, who has since died, was seventy-eight. After her death there was found in her safe deposit box at the Louisa National Bank an envelope containing five separate sheets of writing. Two sheets were written and signed by the testatrix under date of September 11, 1936. Two other and separate papers were written and signed by the testatrix under date of December 29, 1937. The fifth sheet was likewise dated December 29, 1937, but it was not "wholly written" by the testatrix (Kentucky Statutes, Section 4828) but was mostly typewritten. This typed instrument was signed by the testatrix, but her signature was not witnessed as required by the Statute of Wills.

Evidently the typed instrument was prepared by someone else for her use for it contains many blanks. At all events it has been interlined and changed in a number of places, in her handwriting. Item II provides (capitalizing the portions written by testatrix):

"Item II. I give and bequeath to my sister, MRS. ALICE SCHMAUCH of MY BRIDGE STOCK the sum of $ GOVERNMENT BONDS ~~in cash~~ TO MONIA COMPTON MY SISTER COMPTON."

After continuing through five items testatrix wrote in her own hand:

"This is a part of my will to be attached to bal of my will in deposit box made earlier
                                    "Minnie Justice."

The Lawrence County Court admitted the entire will of Mrs. Justice to probate with the exception of the page containing the typewriting. Mrs. Schmauch appealed to the circuit court where the proceeding was consolidated without objection with a suit by the executor for a declaration of rights and a construction of certain portions of the probated will. The chancellor affirmed the finding of the county court and proceeded to make a declaration of rights. Mrs. Schmauch and the executor have appealed.

The portion of the probated will presented for consideration provides:

"Anyone of the neices or nefiew children who is making an effort to finish school to be helped also school books bought in growing up of children of neices and neffew Concrete house to Minnie Laykins the 3 better frames pne to Alice Schmauch of Huntington one to Monia Compton one to Shafter Justice Boy we raised

"500.00 five hundred to Edgar Blankenship
"500.00 to Bernice Blankenship
"500.00 to Dorthea Austin
"500.00 to Elizabeth Austin

"house and lot Jay Justice now lives in to be his *and Arthur can name any others he wishes.* one dollar each to sisters and brothers."

The chancellor determined that the provision regarding the "children of neices and neffew" was too uncertain to be carried out. He likewise adjudged that the undevised portions of testatrix's estate should be divided according to the statutes of descent and distribution. No one questions the propriety of these conclusions and we will not further consider them.

The appellant Arthur Blankenship, however, both individually and as executor questions very vigorously the adjudication that the words "Arthur can name any others he wishes" are too vague and uncertain to enable the Court to determine what testatrix intended thereby to give him.

We are left therefore with the claim of Mrs. Schmauch that the rejected portion of the will—at least so much as was in the handwriting of the testatrix—should have been admitted to probate and the claim of

Mr. Blankenship that the testatrix intended to devise a piece of real estate to him and that she left open for him to elect, from any of her property not specifically devised, which piece he wanted. We will consider these two questions in the order mentioned.

A. It is contended for Mrs. Schmauch that the portion of the rejected writing which is written by testatrix may be probated even though the remainder should be disregarded. She argues that the following may be accepted as a holographic will without the necessity of considering anything not in the handwriting of the testatrix:

"Mrs. Alice Schmauch my bridge stock This is part of my will to be attached to bal of my will in deposit box made earlier

"Dec 29-37

"Minnie Justice."

The difficulty we find with this contention is that it not only ignores the typewritten portion of the paper but also some of the handwriting. Without completely shutting one's eyes to the obvious meaning of what the testatrix actually did, we could not possibly say that she intended the handwritten interlineations to be a complete instrument. The case of re Wolcott, 54 Utah 165, 180 P. 169, 4 A. L. R. 727, is well reasoned and directly in point. In that case the testatrix used a stationer's printed will form and inserted various bequests in her own handwriting. It was sought to probate the handwritten portion of the instrument and to ignore the printing. The court said [page 170]:

"If the deceased had written across the printed words and figures, or through them, or over them, or entirely regardless of them or their meaning and effect, her writing alone would have been admissible in evidence to the same effect as if written on blank paper. But such was not the case. The printed matter in the instrument offered was just as much a part of its contents as the script written by her own hand. She adopted the printed matter in order to fully express her intention. She no doubt procured the blank form for the purpose of aiding her to express her intention in a formal manner. No other conclusion can properly be drawn if we view the instrument from the standpoint of

reason unhampered by desire. * * * If there are authorities sustaining the right of a party to offer for probate as a will such portions of a document as he may desire for the purpose of making a case, while excluding other portions which would defeat his purpose, such authorities are not well considered, and we would hesitate to follow them. If the matter excluded from the offer was totally disconnected therefrom, was not germane, or was entirely irrelevant to the purpose and object of the instrument, a different question would be presented. Such matter might be treated as surplusage and disregarded.''

We think this reasoning is sound and inescapable. Any other conclusion necessarily would deny effect to the provision that the will must be ''wholly'' written by the testator if no witnesses attest it. Even though written or printed matter may appear on the same paper as the will the instrument itself may still properly be said to be wholly written by the testator where the intent is clear and the instrument is complete in itself. Where, as here, however, the written portion is plainly a mere part of an entire instrument which is not wholly in the hand writing of the testator we can do nothing other than give effect to the statute and refuse probate.

B. In the first paragraph of the instrument dated September 11, 1936, testatrix named appellant Arthur Blankenship as her executor. Possibly it was this fact that she had in mind when she said: ''Arthur can name any others he wishes.'' Conceivably she meant to permit him to call in others to assist in the administration of her estate. On the other hand, if she intended to dispose of something by the phrase did she mean to devise it to Arthur or to Jay Justice? Testatrix shows no regard toward the rules of grammar elsewhere in the document and we cannot say that she necessarily meant that the ''he'' should refer to Arthur rather than to Jay Justice. If she intended to give Arthur a piece of real estate we are confronted with the question whether, under the rules of ejusdem generis, she intended to give him his choice of one of her residence properties or simply to allow him to choose any piece of property he wanted.

When she used the word ''others'' rather than ''other'' did she mean to leave her entire residuary real estate to Arthur if he wanted it? Such an interpretation

would be most unreasonable on its face. It may even be questioned whether or not she did not mean to give Arthur some sort of power to appoint her property to someone else. It is strange that she uniformly uses the preposition "to" in each of the bequests as quoted above, and yet when she comes to Arthur omits it. Did this failure to follow a parallel construction indicate a different intent? There are no dispositive words in the clause and we would have to infer not only that she intended to leave something to Arthur but also that she intended Arthur to have the selection of what piece or pieces of her property he desired. We find ourselves engaged in pure speculation and we are unable to determine what testatrix meant by the words used.

It is impossible to say with certainty what she intended. "By our laws, a person may dispose of his estate by will, but that does not mean that every disposition he may make of it will be valid. To make a valid will, one must express his intention with sufficient clarity to enable the court to know from the will itself just what the testator intended. If, from a will itself, it cannot be determined just what the testator's intention was, then the will, or such part of it as may be so affected, is void for uncertainty." Futrell v. Futrell's Executor, 224 Ky. 814, 7 S. W. (2d) 232, 233; Underwood v. Underwood, 273 Ky. 654, 117 S. W. (2d) 596. It follows that the judgment of the chancellor is correct.

Judgment affirmed.