## McLeod et al. v. Andrews et al.

June 18, 1946.

Stoll, Muir, Townsend, Park & Mohney for appellants.

Allen, Duncan, Duncan & Arnold, Colvin P. Rouse and Linzy O. Thompson for appellees.

Opinion of the Court by Morris, Commissioner—
Affirming in part, reversing in part.

Mrs. Kate Dunlap died in 1944; by her will, of date
July 27, 1937, she provided for payment of just debts
and funeral expenses. She had acquired under the will
of her husband some $58,000 in personal property; this
she bequeathed to kindred of her deceased husband. In
the second clause, and by codicils, she made numerous
specific monetary bequests to relatives, friends, her
church and charitable institutions, varying in sums from
$50 to $5,000, totaling at a rough estimate $50,000, this
representing all of her estate, except that acquired under
her husband's will. She owned her residence and two
other parcels of real estate; these were directed to be
sold by her executor.

Among the specific bequests were $3,000 to a niece
Clara Andrews; another to Mrs. Kate Donaldson, $3,-
000, to Mrs. Emmitt Waddell, $1,000, and Mrs. Ella
Harp, $50. These last three bequests are subjected to
controversy as are the bequests and other parts of the
following residuary clause: "If my estate suffices, I wish
all inheritance taxes upon the bequests made by this the
second item of my will to be paid out of the estate so that
each legatee, if possible, shall receive his or her bequest
without any deduction on account of such taxes. Should
my estate not prove sufficient to pay in full the bequests
made by this the second item of this will, then the be-
quests shall be scaled down proportionately and in the
event my estate should prove sufficient to pay all the be-
quests in full and all costs and charges of administra-
tion and all inheritance taxes mentioned, then any resi-
due of my estate which may remain, I give and devise
in equal shares to Mrs. Kate Donaldson, John McLeod,
and George McLeod."

The executor in order to be advised as to his duties,
and to have determined the rights of parties, sought
declaration of rights. Civil Code of Practice Sec. 639a
—1 to Sec. 639a—12. In his pleading, incorporating the
will in full, he carefully set out all the facts with relation
to status of the parties and the conflicting claims.

Clara Andrews, the niece, was, the sole heir at law
of Mrs. Dunlap. Mrs. Donaldson, Mrs. Waddell and
Mrs. Harp had predeceased testatrix and it is agreed

that their bequests lapsed. This presented to the executor the question as to whether lapsed legacies, as claimed by Clara Andrews, passed to her as undevised estate, or under the residuary clause to George McLeod, and the two children of John McLeod, who had predeceased testatrix. Mrs. Waddell and her husband had in 1936 adopted a son, James K. Waddell. He claimed the lapsed bequest to his adoptive mother. All claims were asserted in appropriate pleadings. In a separate paragraph, residuary legatees pleading in the alternative, ask that if the court should hold them not entitled to the lapsed bequests, but that they passed as undevised estate, then the executor should exhaust these bequests in the payment of debts, costs of administration and federal estate taxes, before any part of the residuary estate be used for any of the stated purposes.

Concretely the questions presented to the chancellor for declaration were: (1) Did the legacy to Mrs. Waddell pass to the adopted son or to Clara Andrews as undevised estate, or to the residuary legatees? (2) Did the legacies to Mrs. Donaldson, and specific legacy to Mrs. Harp pass as undevised estate, or under the residuary clause? (3) If the lapsed legacies passed to Clara Andrews, should payments of debts, administration costs and inheritance taxes be made primarily from such legacies, or should they be charged against the residuary estate?

Upon submission the chancellor held that the adopted son of Mrs. Waddell took nothing. This is not challenged here, and his ruling was in conformity with our recent decision in Copeland et al. v. State Bank and Trust Co., (In re Elliott's Will) 300 Ky. 432, 188 S. W. 2d 1017. The chancellor adjudged that the three specific legacies had lapsed, and because so became undevised property, and passed to the heir-at-law; that the bequest of the share of residue to Mrs. Donaldson lapsed, and not being a devise to the legatees as joint tenants or tenants in common, but to them individually in equal shares, was undevised estate and passed to the heir-at-law, she to receive one-third of the residue of the estate, after payment of all legacies, including those lapsing, all charges of administration, and inheritance and estate taxes, one-third to be paid to George McLeod, and one-sixth each to the children of John McLeod. In his judg-

ment the chancellor quoted from the executor's petition the undenied allegation: "Plaintiff states that the testatrix at the time of her death owned considerable property, real and personal, and owed but few debts, and these not large, and it is reasonably apparent that there is sufficient estate not only to pay in full all costs and charges incident to administration, the necessary estate and inheritance taxes, all pecuniary bequests or legacies, but to leave some residuary estate to pass under the provisions of Clause 5 of Item 2 of the will."

We note that in his judgment the chancellor recited that all debts of the testatrix had at that time been paid, and in expressing his opinion holding that the executor should not use any part of the lapsed legacies in payment of debts, costs of administration, said: "Before carving out these legacies which have lapsed, the testatrix provided for the payment of debts. She carefully specified how inheritance taxes and debts were to be paid," and provided: "If my estate suffices I wish all inheritance and estate taxes to be paid out of my estate, so that each legatee, if possible, shall receive his or her bequest &c," and "in the event my estate shall be sufficient to pay all bequests in full and all costs and charges of administration, and all inheritance taxes mentioned, then &c." The chancellor then said: "The legacies were not subject to payments of debts &c. before they lapsed, because these had been provided for before the legacies were carved out. These when lapsed passed into intestate property in the same condition and subject to the same charges only as if they had not lapsed."

We cannot agree with the chancellor in his conclusion that the lapsed legacies should not be applied to the payment of debts, costs of administration and the taxes mentioned. The chancellor concluded that it did not appear to be the intention of the testator to subject lapsed legacies (which became intestate property) to the payment of these items. The lapsed devises came to the heir-at-law, not under the will but by operation of the statute, KRS 394.500. "Unless a contrary intention appears from the will, real or personal estate comprised in a devise incapable of taking effect, shall not be included in the residuary devise, but shall pass as in case of intestacy." If the lapsed legacies do not fall in the residuary clause, then, as held by the chancellor, they

become undisposed estate. Though those entitled to the estate do not take, or title does not pass until the death of the testator, the lapse is upon the death of a legatee prior to testator's death; the portion he would have taken had he survived, at once becomes a part of the undevised estate, and would necessarily, unless a contrary intention be shown, be subject to debts and costs of administration. The lapsed legacies become a part of testatrix' estate just as if she had failed to dispose.

It seems clear from the will that Mrs. Dunlap desired her estate to pay all debts, taxes (named) and costs of administration. She directed a "scaling down proportionately" of bequests, in case her estate was insufficient to pay bequests, but what follows appears to us to be a direction to pay costs of administration, etc., from her estate, and the lapsed legacies as held by the chancellor, become a part of her estate upon the death of the legatees. The residuary, as set out in clause 2 of the will, cannot be used for these payments, because it is only after such payments that a residuary exists or arises. A residuary is that portion of the estate which is left after discharging all legal and testamentary claims, including bequests. Howe v. Howe's Ex'x et al, 287 Ky. 756, 758, 155 S. W. 2d 196.

There are few cases touching on the question of whether lapsed legacies should primarily bear the burden of debts of the testator and costs of administration, or it should fall in part on the residuary legacies. The general rule is laid down in 89 C. J. "Wills" sec. 2570; "While a testator may, by charging specific property with the payment of debts, exempt undisposed of property from such payment, his intention to do this must be very clearly manifested by the terms which he uses, for as a general rule, regardless of express directions to sell certain property and apply the proceeds to the payment of debts, or a bequest of property subjecting it, as against other property bequeathed, to the payment of debts, property undisposed of must first be resorted to for payment of testator's debts. * * * Lapsed legacies of the residue will first be applied before resort will be had to the residuary legacies effectually devised or bequeathed."

In 28 R. C. L. 300, the rule is stated to be that intestate property and property set aside by the testator to

pay his debts are first of all to be used to pay such debts. We approved that rule in Strode v. Strode, 213 Ky. 179, 280 S. W. 921. In Northcutt's Ex'x v. Farmers Nat. Bank, 292 Ky. 628, 166 S. W. 2d 971, 973, 144 A. L. R. 472, it appeared that two legatees had died prior to the death of testatrix. These lapsed under the statute. The question presented here arose in that case, and citing several foreign cases on this point, we held: "That in the absence of an intention in the will to exempt undisposed of property from liability for debts and costs of administration, such undisposed of property should first bear the burden, and the intention to lift the burden from such undisposed of property should 'be very clearly manifested' by the terms of the will." Greenway v. Irvine's Ex'r, 234 Ky. 597, 28 S. W. 2d 760.

Counsel for appellee, the heir-at-law, suggest that the Northcutt case was rested upon what this court concluded was the intention of the testatrix as observed from the will itself. The same is true here. The part applicable is that in which we found no manifested intention to exempt undisposed of property. We said above that the lapsed legacies fell back into the estate of testatrix. That such was and is the case is shown by codicils to the will. Certain specific legatees (other than the three mentioned above) had died prior to Mrs. Dunlap's death. In one case, and perhaps two, she redisposed of what she assumed to be a part of her estate, in one case to the heirs of decedent. She did not act in the three named cases, and whether it was her intention or not, the lapsed legacies upon the death of the legatee became part of her estate, which she could have disposed of but did not. We are of the opinion that the residuary legacies should not be primarily chargeable with costs of administration, debts or the taxes mentioned, and that the undevised estate including lapsed legacies, should be first applied to those purposes.

It is conceded that the three lapsed specific bequests passed as undevised property by reason of KRS 394.500; Northcutt's Ex'x v. Farmers Nat. Bank, 292 Ky. 628, 166 S. W. 2d 971, 144 A. L. R. 472, but contended that the devise of the residuary estate to the three named, was to them as tenants in common, and upon Mrs. Donaldson's death, without issue, passed to those living, relying upon the provisions of KRS 394.410(1).

The language of the residuary clause is, after providing a contingency as to costs etc., "then any residue of my estate which may remain I give and devise in equal shares to Mrs. Kate Donaldson, John McLeod and George McLeod." It is not contended that the devise was to a class, but to joint tenants or tenants in common. Appellants in support of their claim cite several domestic and foreign cases. Morison v. Meade, 204 Ky. 86, 263 S. W. 768; Holland v. Holland's Ex'r, 238 Ky. 841, 38 S. W. 2d 967; Auxier's Ex'x v. Theobald, 255 Ky. 583, 75 S. W. 2d 39, and Lally v. Lally's Adm'r, 257 Ky. 105, 77 S. W. 2d 423, 424. In the last case the devise was one-third of real and personal property, each to James and Dennis Hanley, "absolutely and forever," the other one-third to James Hanley in trust for the use of Ellen Ratler, and at her death to "revert" to James and Dennis, or their heirs, share and share alike. James predeceased testatrix, leaving no issue, but left surviving Dennis, a sister and children of a deceased sister. The question was the proper distribution of James Hanley's one-third interest. It was claimed by some of the parties that the portion of the estate devised to James became undevised property, and passed to the heirs-at-law. The chancellor held that after payment of debts and specific devises, the devise to James passed by operation of law to Dennis and a child of a deceased daughter. In this and each above cited, in which we held the devises to be to joint or tenants in common, there was a devise of undivided real property. There are several cases cited from other jurisdictions; an examination of these show, with the exception of one, where the character of the property devised is not disclosed, that both real and personal property were embraced in the legacies, and some opinions holding cotenancy revolved around local statutes.

As we read the cases it is manifest that the court held the existence of cotenancy because all the legacies included real estate. In none of them does it appear that an effort was made to distinguish the character of the estate devised. Here, as is pointed out, the real property of testatrix was reduced to cash. The question arises as to whether or not cotenancy could exist in cash legacies, unless the intention to create such was manifested by the document creating the legacy. We do not mean to say that cotenancy could not exist as to personal property. The rule is that it may. See 14 Am. Jur.

"Cotenancy," 19, under which many cases so holding are cited. An examination of a few of these show that the relationship arose by contract, agreement or some specific writing which served to create the cotenancy. As exemplary, a joint bank account created with the understanding that either party might withdraw without consent of the other; again in case of the holders of receipts for grain deposited in a warehouse, and commingled with grain of the owner, and in a leasehold of mineral rights. All these reciprocal rights appear to have grown out of agreements or specific acts creating cotenancy.

Appellants apparently take the position that the residuary devise created the legatees tenants in common, perhaps distinguishing joint tenancy, which is an estate "held by two or more persons jointly with equal rights to share in its enjoyment during their lives, and having as its distinguishing feature the right of survivorship * * * by virtue of which the entire estate upon the death of any of the joint tenants goes to the survivors, and the last survivor who takes by inheritance. * * * Where a devise or bequest to two or more persons by name, in such form as to create a joint tenancy, and one of them dies before the testator * * * the whole interest vests in the survivors; one of the essentials is unity of interest; another unity of title." 14 Am. Jur. 6, 7. "A tenancy in common may be defined as that character of tenancy whereby two or more persons are entitled to land in such manner that they have undivided possession, by several freeholds. While the ordinary tenancy in common does not give the tenants the right of survivorship, it has been intimated that such right may be annexed to an estate in common if the intention to do so is clearly expressed. Unlike the joint tenancy, the tenancy in common is characterized by a single essential unity—that of possession or the right of possession, of the common property. If such unity exists, there is a tenancy in common irrespective of other unities, and if it does not exist, the estate is not a tenancy in common." 14 Am. Jur. "Cotenancy," sec. 14. Stambaugh v. Stambaugh, 288 Ky. 491, 156 S. W. 2d 827, adopted and applied the definition of joint tenancy, as quoted supra.

The conclusion reached by the chancellor that the devises to the residuaries were "individual" is not with-

out substantial authority. In Snellings v. Downer, 193 Ga. 340, 18 S. E. 2d 531, 532, 139 A. L. R. 860, testator had devised "all the rest, residue, and remainder of my estate" to his brother and three sisters, naming all of them. There was a lapse by death, and the contention there was as here. The court held the lapsed estate passed to the heirs-at-law of testator; this rule the court found to be based on the "better-reasoned decisions of other States." This case cites Toucher v. Hawkins, 158 Ga. 482, 123 S. E. 618, which points out the distinction when the devise is to a class and to individuals. "If a gift is made to beneficiaries by name, prima facie the gift is not one to a class, but to the beneficiaries as individuals, even though the persons named may possess some quality in common." The court adopts the rule from Page on Wills, 1941 Ed. 195. "It is now settled, by the weight of authority, that a lapsed part of the residuum does not itself pass into the remainder of the residuum, but that it passes to the testator's next of kin as intestate property." The writer points out that decisions in eighteen states so hold, while six others were contra or criticised. The opinion, supra, is followed by a list of seventeen states, the District of Columbia and Canada, whose courts have followed the majority rule, and the commentator notes "in a few decisions the courts seem to have expressly or impliedly refused to follow the rule."

An exemplary case is Plummer v. Roberts, 315 Mo. 627, 287 S. W. 316, where there was a bequest of an aliquot part of the residuary, defeated by prior death of legatee. The court held that the fund passed to the next of kin and not to surviving legatee. The court observed that although the testator's general intention to dispose of his entire estate as shown by the will, indicated an intention that any lapsed share should go to the surviving residuary legatees, he not only failed expressly so to do, but he assigned to each residuary legatee a specific aliquot part, which was inconsistent with an intention to augment the shares of the surviving legatees.

We agree with what appears to be the majority rule, and it follows that we must hold, as did the chancellor, that the bequest to Mrs. Donaldson upon her death became a part of the undevised estate, and in this as well as with respect to the lapsed specific legacies, including that

to Mrs. Waddell, correctly declared the rights of the parties. In these respects the judgment is affirmed but reversed as to the allocation of costs primarily against the residuary estate.

Affirmed in part and reversed in part.

Judges Latimer and Dawson dissent from so much of the opinion as holds the residuary devisees not to be tenants in common.