# Westover's Ex'x et al. v. Westover et al.

October 3, 1950.

Ward Yager, Judge.

L. M. Ackman for appellant.

John L. Vest, Lee Lanter and F. A. Harrison for appellee.

JUDGE KNIGHT—Affirming.

Sometime in the year 1920, the exact date not being shown in the record, R. L. Westover established at Williamstown a weekly newspaper, the Grant County News, which he continued to publish until his death on February 12, 1947. On October 5, 1931, he employed appellant Edythe G. Harrell and from that time until his death she continued in his employ as general office helper, news gatherer, and as an all around assistant in the publication of the newspaper which was a successful operation financially. On June 2, 1942, he executed a will which was duly probated in Grant County shortly after his death. The first clause of his will provided for the payment of his debts and funeral expenses. The third clause made a small bequest to a faithful servant and the fifth clause named appellant as executrix under his will. None of these items is here involved. Since this litigation involves only the construction of clauses two and four of the will it is necessary to set them out in full as follows:

### Clause 2

"I bequeath to Edythe G. Harrell my newspaper

plant, consisting of all machinery, type furniture and fixtures; also all money on deposit in banks in my name and all accounts on the books, the good will, etc., to be hers without let or hindrance and to do with as she likes. Said Edythe G. Harrell shall pay all outstanding obligations connected with the publishing of the Grant County News. I also bequeath her the building in which the Grant County News is published, located at 404 Main Street, Williamstown, Ky. She is also to have her selection of any three pieces of furniture from my home.''

## Clause 4

''All the remaining property that I own, consisting of my residence in Williamstown, my farm at Crittenden, consisting of 211 acres, more or less, my personal property, (excepting that specified in paragraph 2), is to be sold by my executor and the proceeds divided among my natural heirs, as the law may provide.''

Between the time of the execution of the above will and the time of his death, towit on March 6, 1945, deceased sold the 211 acre farm mentioned in clause 4 of the will and deposited the net proceeds of that sale amounting to $13,492.60, in the Bank of Williamstown, it being the only account he had in that bank. He subsequently drew checks against this account totaling $2214.32, leaving a balance of $11,278.28, and it is this account in this amount that is in controversy in this suit. At the time of his death deceased had a separate account in the Grant County Deposit Bank, the balance in which account was $11,395.64, and the evidence indicates that this was the current working account of his weekly newspaper. At the time of his death he also had a separate account in the Citizens Bank of Dry Ridge with a balance of $2367.43, but the evidence does not show the particular purpose of this account although it is indicated in appellees' brief that it was used in connection with his business transactions other than his newspaper operation, which he apparently wished to keep separate from his other operations, including his farm. In order to complete the picture it is also necessary to state that between the date of the execution of his will and the date of his death, towit, on May 24, 1943, deceased executed a deed to appellant Edythe G. Harrell whereby he conveyed to her the prop-

erty which he had bequeathed to her under clause 2 of his will and included the newspaper, the equipment used in connection therewith, the cash and money on deposit in banks and the building in Williamstown in which the paper was published. In this deed was a provision that the grantor reserved exclusive control over all the property covered by the deed during his lifetime and that grantee was to take no title to the property unless she survived him. After death of decedent his heirs at law brought a suit against Edythe G. Harrell to set aside this deed and a separate suit contesting the will of deceased, but were unsuccessful in both suits and they were dismissed. The present suit was then brought by the heirs at law, appellees herein, for a construction of the will of deceased.

It was and is appellees' contention, in which they were upheld by the judgment of the lower court, that the balance of the proceeds of the sale of the 211 acre farm mentioned in clause 4 of decedent's will, and represented by the $11,278.28 account in the Bank of Williamstown, belongs to the heirs at law under clause 4 of the will.

It was and is appellant's contention that when the farm was sold and the proceeds were deposited in the Bank of Williamstown, it was no longer controlled by nor passed to the heirs at law under the fourth clause of decedent's will but that instead it passed to appellant under the second clause of the will which gives her "all money on deposit in banks in my name." She appeals from the judgment of the lower court denying her contention.

In construing the will to determine the rights of appellant and appellees to the fund in controversy it will be necessary to determine whether it was a specific or a residuary devise, whether, if a specific devise, there was an ademption by a sale of the property which produced the fund.

It is appellant's contention that clause 4 is not a specific devise of the property therein named but that it was intended as a residuary devise of all the remainder of testator's property not disposed of in clause 2.

We think the legacy covering the property set

out in clause 4 of decedent's will is a specific legacy. While the particular items of property mentioned in that clause were not to be turned over to the beneficiaries named therein, the proceeds from the sale of those specific items by the executor were to be turned over to these beneficiaries. Had these specific items which are mentioned in clause 4 been given direct to the named beneficiaries for division among themselves there could have been no question but that the legacy was a specific one. Howe v. Howe's Ex'x, 287 Ky. 756, 155 S.W.2d 196. We think the fact that the executor of the estate was directed to sell the specific items and divide the proceeds among the named beneficiaries does not change its character as a specific bequest. Being a specific devise, the sale by the testator, before his death, of one of the specific items mentioned in the fourth clause of his will, towit the 211 acre farm, did not constitute an ademption of the devise unless a contrary intention on the part of the testator appears from the will or by parol or other evidence. KRS 394.360.

It is appellant's contention that when testator sold the farm mentioned in clause 4 of his will and deposited the proceeds of the sale in a bank instead of investing the fund in other ways which would have passed it to his heirs under clause 4 of the will, that fact was convincing evidence of his intention that he no longer wanted these proceeds to go to the heirs but that he purposely placed this fund in a bank account so that it would go to appellant under clause 2 of his will. We do not construe these sections as manifesting such intention on the part of the testator. We think the fact that he placed the proceeds of the sale of the farm in a new and entirely separate bank account and kept them that way until his death, indicates that this fund was segregated deliberately and manifested the intention of the testator that the proceeds of the fund, unless used by him in his lifetime, should be kept intact for final disposition to his heirs under the fourth clause of his will. Furthermore, we do not construe the words, "all my money on deposit in banks in my name," in the second clause as applying to any deposit except the one in the Grant County Deposit Bank which was the separate account he carried for the operation of his newspaper. The words above quoted must be taken in their context and so taken it seems clear to us that his

intention was that he wanted her to have the newspaper plant and everything owned and used by him in connection with the publication of the Grant County News, to the success of which appellant had contributed no small part. This included the building, machinery, type, furniture, fixtures, accounts on the books, good will, and his operating bank account which he kept separate for that purpose, charging her with the payment of all outstanding obligations connected with the publication of the newspaper. We do not think the words above quoted should be lifted from their context in clause 2 and held to cover a separate deposit which he had opened in another bank when he sold his farm.

Appellant further contends that in addition to the provisions of the will itself, which she thinks shows testator's intention that she should have all the money on deposit in any bank at the time of his death, there was "other evidence" shown in the record which manifests that intention within the meaning of the statute above referred to, KRS 394.360. Included in this evidence is the deed heretofore referred to which decedent executed to appellant about one year after execution of his will. This deed was testamentary in character, was not to take effect until his death, nor unless appellant was still living when he died. In it he conveyed to appellant, in virtually the same language as in his will, the real estate, printing plant, money on deposit in banks, etc., as he had devised to her in his will. We think this deed could hardly be construed as intending to include more than he had devised appellant under his will and certainly not to include the deposit resulting from the sale of the farm which was made about two years after the execution of this deed to appellant.

Then there was the testimony of appellant's attorney, Mr. Ackman, that after the farm had been sold he, as chairman of a local U. S. Savings Bond drive, solicited Mr. Westover in an effort to sell him some bonds but that he refused, giving as his reason that he was keeping this money to buy new and better equipment for his newspaper plant when conditions became more favorable. Whether he intended doing that or was merely using that as an excuse for not buying Savings Bonds is a matter for conjecture but we do not think it does much to manifest testator's intention. True it is that had he bought this equipment appellant

would have taken it under clause 2 of the will but not having done so his intention to keep it intact as a deposit for the heirs mentioned in clause 4 of the will is as strongly implied as any other intention he may have had.

Then there was the direct testimony of two witnesses on which appellant relied as "other evidence." One of these was the testimony of Fred Brown, a longtime friend of deceased, who testified that about six months before Mr. Westover died he called this witness into the back room of his printing office and when the two were alone Mr. Westover told him that he had arranged for Miss Harrell to have his plant, building and equipment and the money—they were to go to her. The other testimony was that of Mrs. Lucy Perry, a cousin, though not an heir at law of deceased, who testified that about a year before his death deceased told her "he wanted Edythe Harrell to have all his money, the bonds and everything he had except his home. He wanted her to sell that and divide that with his people." The chancellor, who no doubt knew these witnesses and heard their test'mony, was apparently not impressed with the credibility of their testimony, as we are not from reading it. His decision on that point is entitled to great weight and we are not inclined to disturb it.

## Conclusion

In construing a will of a testator the cardinal rule of construction, of course, is to arrive at the intention of the testator by what he said. Construing this will in that light it seems clear to us that the testator intended that appellant should have his printing establishment and any money in the bank account which he used in connection with that enterprise; that his natural heirs at law, who were his brothers and sisters, a niece and nephew, with whom he was on good terms as shown by a letter to some of them written three days before his death, should have the proceeds from the sale of the home, farm and other personal property mentioned in clause 4 of his will; that there was no intention shown in the will or by parol or other evidence that a sale of the land operated as an ademption. The deposit in the Bank of Williamstown therefore goes to the heirs at law under the will. The judgment of the lower court having so held, it is affirmed.