**HARLAN NATIONAL BANK, etc.,**
**Appellant,**

**v.**

**John A. BROWN et al., Appellees.**

**HARLAN NATIONAL BANK, etc., et al.,**
**Appellants,**

**v.**

**John A. BROWN, etc., et al., Appellees.**

Court of Appeals of Kentucky.

June 13, 1958.

As Modified on Denial of Rehearing

Dec. 12, 1958.

Charles I. Dawson, Louisville, for Harry M. Bennett et al.

James S. Greene, Jr., Harlan, for Harlan National Bank.

Walter B. Smith, Louisville, for William L. Chapman.

Wilson W. Wyatt, Louisville, for John A. Brown, Executor.

WADDILL, Commissioner.

These actions, consolidated by agreement for trial in the Harlan Circuit Court, were instituted by the Harlan National Bank as executor and trustee under the will of C. V. Bennett, deceased, seeking the judicial interpretation of the will and advice concerning its duties thereunder. Subsequent pleadings raised issues involving the will of Bennett's widow, Charlotte Bennett Chapman, who died testate after her marriage to William L. Chapman.

Four issues are presented for determination: The first issue is whether or not Paragraphs IV, V, and VI of C. V. Bennett's will are void for indefiniteness; the second issue concerns the number of shares of V & C Coal Company common stock to be distributed between Trust A and Trust B under Paragraphs IV, V, and VI; the third issue is whether the Harlan National Bank has the authority to vote the stock of the V & C Coal Company contained in Trust B which was created by Paragraph V; and the final issue involves the ownership of two shares of stock now held by John A. Brown.

C. V. Bennett died testate July 14, 1953, and his will, consisting of ten numbered paragraphs, was probated in the Harlan County Court August 12, 1953. He was survived by his third wife Charlotte Bennett, by whom he had no children; by two children by his first and deceased wife; and by four children by his divorced second wife.

The first and second issues arise under Paragraphs IV, V and VI of the will of C. V. Bennett which read:

"Paragraph IV"
Trust A

"Subject to my wife surviving me, I give, devise and bequeath one-half (½) of the residue of my estate to Harlan National Bank, Trust Department, Harlan, Kentucky, Trustee, for the following uses and purposes: * * *."

(This trust was for the benefit of Charlotte Bennett for life, and it gave her testamentary power of ap-

pointment of the corpus. For the complete will of C. V. Bennett, see appendix.)

## "Paragraph V"
## Trust B

"I give, devise and bequeath the other one-half (½) of the residue of my estate, not disposed of in Paragraph IV hereof, to Harlan National Bank, Trust Department, Harlan, Kentucky, Trustee, who shall divide the trust estate hereby created into as many separate and equal shares as may be necessary to provide one share for the benefit of each of my children then living, and one share for the benefit of the then living descendants of any deceased child per stirpes, and said shares shall thenceforth be held by my trustee for the following uses and purposes: * * *."

(For the complete will of C. V. Bennett, see appendix.)

## "Paragraph VI"

"In dividing the residue of my estate into two equal parts for the purpose of setting up Trust A and Trust B, there shall be set up and included as a part of the corpus of Trust A only seven hundred and fifty (750) shares of the common stock of the V & C Coal Company owned by me at the time of my death, the remainder of such stock owned by me to constitute a part of Fund B."

We consider the first question of whether or not Paragraphs IV, V and VI of the will are void for uncertainty. This issue was raised by William L. Chapman who was permitted to intervene in these actions in the circuit court. The events giving rise to Chapman's claim are these. On December 21, 1954, Charlotte Bennett executed her will. Therein she ex-

ercised the power to appoint the corpus of Trust A as follows:

"All ' property over which I may have a power to appoint at the time of my death, either by will or otherwise I hereby appoint to my estate to be distributed in accordance with the provisions of this will. Any reference to property herein shall include such appointed property."

She then bequeathed the V & C Stock and certain other properties to John A. Brown in trust for the benefit of her father, Jasper Dawn; her brother, William Dawn; and her sister, Thelma Ethel Padlo.

On December 22, 1954, the day after she executed her will, she married William L. Chapman. Upon being informed that her will had been partially revoked by her subsequent marriage, she executed a codicil to her will on March 18, 1955, by which she revived the provisions of her original will. William L. Chapman was not included as a beneficiary in her will, and was not added as a beneficiary by her codicil. She died March 28, 1955, while these actions pended for trial in the circuit court.

Chapman renounced his wife's will in favor of his statutory rights in her estate under KRS 392.020. He seeks to include within her dowable estate not only her separate assets, but assets from the C. V. Bennett estate as well.

■ If the will of C. V. Bennett is valid, the trust assets over which Charlotte Bennett Chapman had the power to appoint by will did not become a part of her estate for the purpose of measuring Chapman's dower rights. If, however, C. V. Bennett died intestate, one-half of his personal property would pass to Charlotte Bennett Chapman's estate and would constitute a part of her estate for the purpose of determining Chapman's dower rights under KRS 392.-020.

To support his contention that Paragraphs IV, V and VI of Bennett's will are void, Chapman relies upon the rule stated in Blankenship v. Blankenship, 276 Ky. 707, 124 S.W.2d 1060, 1062, that:

"If, from a will itself, it cannot be determined just what the testator's intention was, then the will, or such part of it as may be so affected, is void for uncertainty."

Chapman's contention was rejected by the Chancellor. In pertinent part, the Chancellor's opinion reads:

"The will of C. V. Bennett is valid and the property contained in the corpus of Trust A, created under the will, is not a part of the intestate property left by Charlotte Bennett Chapman within the meaning of Section 392.020 of the Kentucky Revised Statutes. * * *, William Lincoln Chapman is not entitled to any dower rights in it. St. Matthews Bank v. De Charette, 259 Ky. 802, 83 S.W.2d 471 [99 A.L.R. 1146]; Ligget v. Fidelity & Columbia Trust Co., 274 Ky. 387, 118 S.W.2d 720."

On January 16, 1956, judgment was entered in the Harlan Circuit Court which declared the will of C. V. Bennett valid. Chapman has prosecuted a cross-appeal from that part of the judgment upholding the validity of Bennett's will.

■ This Court has concluded that Paragraphs IV, V and VI of Bennett's will are not void because the meaning of each paragraph is ascertainable from the language used in the will.

The second question involves the number of shares of the V & C Coal Company common stock to be distributed between Trust A and Trust B under Paragraphs IV, V and VI of Bennett's will. The V & C Coal Company common stock was the most valuable asset owned by C. V. Bennett at his death.

On September 14, 1950, the date on which Bennett executed his will, the V & C Coal Company had outstanding 2,146 shares of its common stock. Bennett owned and held in his own name 1,930 of these shares; John A. Brown held 1 share, the ownership of which is in issue in these actions; and Bennett's wife, Charlotte, owned the remaining 215 shares which Bennett had given her after their marriage.

On December 4, 1950, a stock dividend was declared by the V & C Coal Company through a capitalization of its accumulated profits which resulted in Bennett's receiving 2,568 shares, Charlotte Bennett 285 shares, and John A. Brown 1 share. After the stock dividend was received, Bennett held and owned in his own name 4,498 shares, Charlotte Bennett 500 shares, and John A. Brown held 2 shares subject to a trust agreement with Bennett. Such was the distribution and ownership of the 5,000 shares of the common stock of the V & C Coal Company at the time of Bennett's death.

The executor and trustee under the will of Charlotte Bennett Chapman contend that Paragraphs IV and V of Bennett's will call for Trusts A and B to be equal in value. In support thereof, it is contended that the limitation in Paragraph VI to 750 shares should "give way" to allow one-half of the residue to go into Trust A. This contention would render the provisions of Paragraph VI ineffectual.

The executor and trustee under the will of C. V. Bennett and the Bennett children ask for the construction of Bennett's will which allocates the common stock of the V & C Coal Company owned by Bennett at his death as follows: 750 shares to Trust A and the remaining shares to Trust B.

The Chancellor interpreted Bennett's will to mean that Trust A should contain 750 of the original shares of the common stock of the V & C Coal Company owned by Bennett at the time he executed his will plus their percentage share of the stock dividend

issued on December 4, 1950. The judgment declares:

"There shall be placed in Trust A; 750 of the 1930 shares of V & C Coal Corporation common capital stock held by C. V. Bennett prior to the stock dividend and 750/1930ths of the shares issued to him as a stock dividend (998 shares), or a total of 1,748 shares of V & C Coal Corporation common capital stock. There shall be placed in Trust B: the other 2750 shares of V & C Coal Corporation common capital stock held in the Bennett estate, * *."

The executor and trustee under Bennett's will and the Bennett children have appealed urging that the Chancellor erred in distributing the stock, owned by Bennett at his death, between Trust A and Trust B. The executor and trustee under Charlotte Bennett Chapman's will has cross-appealed contending that the judgment is erroneous insofar as it does not equalize the residue between the two trusts created by Bennett's will; but in the event Trust A must be limited to 750 shares, the interpretation given to the will by the Chancellor that the limitation is to 750 of the original shares plus the stock dividend should be upheld.

In Wickersham v. Wickersham, 174 Ky. 604, 192 S.W. 688, 690, the fundamental rule for interpreting wills is stated thusly:

"The fundamental rule in the construction of wills is that the intention of the testator, as gathered from his entire will, must prevail, unless it be opposed to some positive provision of the law, or some general principle of public policy. The entire will must be taken into consideration; each part and clause thereof must be read in connection with the other parts. And all technical rules of construction must give way before the intention of the testator which governs whenever it can be fairly ascertained. Cecil v. Cecil, 161 Ky. 419, 170 S.W. 973. But it must not be forgotten that in seeking to ascertain the intention of the testator the real question always is, not 'What did the testator intend to say?' but 'What is meant by what he did say?' Bedford v. Bedford's Adm'r, 99 Ky. [273] 284, 35 S.W. 926; Howard v. Cole, 124 Ky. [812], 816, 100 S.W. 225; Fowler v. Mercer's Ex'r, 170 Ky. 353, 185 S.W. 1117; Lewis v. Reed's Ex'r, 168 Ky. 559, 182 S.W. 638; Guthrie v. Guthrie's Ex'r, 168 Ky. 805, 183 S.W. 221; Bingel v. Volz, 142 Ill. 214, 31 N.E. 13, 16 L.R.A. 321, 34 Am.St.Rep. 64."

Applying this rule to Bennett's will, as bearing upon Paragraphs IV, V, and VI, it is clear from the will that Bennett divided the residue of his estate equally between Trusts A and B. However, the provisions of Paragraphs IV, V, and VI, do not require that Trusts A and B be of equal value.

Our immediate inquiry is whether the shares of stock bequeathed by Paragraph VI of Bennett's will pass as residue.

"Residue" is defined in McLeod v. Andrews, 303 Ky. 46, 196 S.W.2d 473, 476, as "that portion of the estate which is left after discharging all legal and testamentary claims, including bequests." It has also been defined to mean "what is left after all liabilities are discharged, and all the purposes of the testator, specifically expressed in his will, are carried into effect." Blacks Law Dictionary; also see, Page on Wills, Vol. 3, Sec. 986, p. 79; Redfearn on Wills and Administration, Rev.Ed., Sec. 144, p. 234; Howe v. Howe's Ex'x, 287 Ky. 756, 155 S.W.2d 196; Henderson v. First National Bank of Rome, 189 Ga. 175, 5 S.E.2d 636, 639, 128 A.L.R. 816.

This Court has concluded that Paragraph VI of Bennett's will does not dispose of residue because it particularly bequeaths a stated number of shares of stock to Trusts A and B at Bennett's death. Hence, it is a particular legacy, either specific, demonstrative or general. Since the

questions of abatement and ademption are not in these cases, it is not necessary to further classify this legacy. The gift of the stock is not made less effective as a particular legacy by its being contained in a clause using residuary language. Westover's Ex'x v. Westover, 313 Ky. 545, 233 S.W.2d 105; Howe v. Howe's Ex'x, 287 Ky. 756, 155 S.W.2d 196; 57 Am.Jur., Wills, Secs. 1422, 1423, pp. 952, 954. Also see, Adams v. Conqueror Trust Co., 358 Mo. 763, 217 S.W.2d 476, 7 A.L.R.2d 268.

There is an abundance of authority from other jurisdictions which hold bequests similar to that under Paragraph VI of Bennett's will to be specific legacies. In re Painter's Estate, 150 Cal. 498, 89 P. 98, 11 Ann.Cas. 760; Henderson v. First Nat. Bank, 189 Ga. 175, 5 S.E.2d 636, 128 A.L.R. 816; Dauel v. Arnold, 201 Ill. 570, 66 N.E. 846; 103 Ill.App. 298; In re Corby's Estate, 154 Mich. 353, 117 N.W. 906; Johnson v. Poulson, 32 N.J.Eq. 390; Kearns v. Kearns, 77 N.J.Eq. 453, 76 A. 1042, 140 Am.St.Rep. 575; In re Billington's Estate, Sur., 14 N.Y. S.2d 213; Robinson v. McIver, 63 N.C. 645; In re Wiggins' Will, 179 N.C. 326, 102 S.E. 499; Koontz v. Hubley, 19 Ohio App. 484; 111 Ohio St. 414, 145 N.E. 590.

■ The Chancellor erred in placing more than 750 shares of the common stock of the V & C Coal Company in Trust A. The judgment on this phase of the case is reversed with directions to place 750 shares in Trust A and the rest of the shares owned by Bennett at his death into Trust B.

■ The next question is whether the Harlan National Bank as executor and trustee under the will of C. V. Bennett can vote the stock in Trust B. Paragraph VIII gave to Charlotte Bennett Chapman the power to vote the shares of the V & C Coal Company common stock in both trusts during her lifetime. That power died with her. Therefore, as the will is silent concerning who should vote it after her death, it follows, as a matter of law, that the executor of C. V. Bennett's estate has this power

during the administration of Bennett's estate. See Schmidt v. Mitchell, 101 Ky. 570, 41 S.W. 929, 72 Am.St.Rep. 427; and 13 Am.Jur., Corp., Sec. 494, p. 531, 532. Inasmuch as the estate is still being administered the question concerning the trustee's right to vote the stock is not now in issue. KRS 418.065; Board of Education of Fayette County v. Board of Education of Lexington Independent School Dist., Ky., 250 S.W.2d 1017, at page 1022.

■ The final issue is whether the two shares of the common stock of the V & C Coal Company held by John A. Brown under a trust agreement belong to Brown or to Trust A or to Trust B. Prior to the execution of Bennett's will, Brown obtained possession of one share of stock under a written agreement which he signed. The effect of the agreement was that Brown held the one share of stock as trustee for Bennett. This share and its dividend share were found in Charlotte Bennett Chapman's lock box after her death with the trust agreement, which Brown had signed, attached to the original share. We agree with the Chancellor that these two shares of stock now belong to Trust B.

The judgment is affirmed in part and reversed in part, and the Harlan Circuit Court is directed to enter a judgment in conformity with this opinion.

CAMMACK, SIMS, and MONTGOMERY, JJ., dissent for the reason that paragraphs IV, V, and VI of the will are so indefinite and ambiguous that the intent of the testator cannot be ascertained therefrom.

APPENDIX
Last Will and Testament
of
C. V. Bennett

"I, C. V. Bennett, a resident of Grays Knob, Harlan County, Kentucky, being of sound mind, do make this my Last Will and Testament, hereby revoking all testamentary dispositions heretofore made by me.

"Paragraph I"

"I direct that all my just debts, funeral expenses, and costs of administration of my estate shall be paid as promptly as may reasonably be done.

"Paragraph II"

"I direct that all Federal estate taxes, and all State estate taxes and inheritance taxes, assessed against my estate, or against any of the bequests and devises herein made, shall be paid out of my general estate as though same were a debt against my estate.

"Paragraph III"

"I give, devise and bequeath to my wife, Charlotte Bennett, if she survives me, in fee, all of my personal effects, such as jewelry, articles of personal use, and any passenger automobiles owned and used by me personally at the time of my death, and I give to my said wife, for and during her lifetime, my residence located at Grays Knob, Harlan County, Kentucky. I make no disposition of the furniture and furnishings in my residence, as same belong to my said wife.

"If my said wife does not survive me, then all of the property referred to in this paragraph shall be treated as a part of Trust B, hereinafter provided for in Paragraph V. At her death, my residence, in which she is hereby given a life estate, shall become a part of Trust B hereinafter created, and subject to all of its provisions.

"Paragraph IV"
Trust A

"Subject to my wife surviving me, I give, devise and bequeath one-half (½) of the residue of my estate to Harlan National Bank, Trust Department, Harlan, Kentucky, Trustee, for the following uses and purposes:

"(a) The entire net income of the trust created by this paragraph, and hereinafter designated as 'Trust A', shall be paid by my trustee to my wife, Charlotte Bennett, during her life. Such payments shall be made in monthly, quarterly, or annual installments, as may be requested by her in writing. Provided, however, that, if in the sole judgment and discretion of my said wife, such income in any year is not sufficient to maintain her in the style and manner of living to which she was accustomed at the time of my death, my trustee shall either hypothecate or sell, as directed in writing by my said wife, such part of the corpus of Trust A, other than the capital stock of the V & C Coal Company, as may be necessary to make up the deficiency in income as specified by my said wife. My wife, Charlotte Bennett, shall have the unrestricted power by will to dispose of the corpus of Trust A hereby created, free of this trust.

"Should my said wife die without having exercised the power of appointment hereby conferred upon her, the corpus of Trust A and any undistributed income therefrom shall be treated as if same from the beginning had been a part of Trust B, provided for in Paragraph V.

"Should my said wife die prior to my death, the property referred to in this paragraph of my will shall be treated as a part of Trust B, provided for in Paragraph V, and shall be subject to all of the provisions applicable to Trust B.

"Paragraph V"
Trust B

"I give, devise and bequest the other one-half (½) of the residue of my estate, not disposed of in Paragraph IV hereof, to Harlan National Bank, Trust Department, Harlan, Kentucky, Trustee, who shall divide the trust estate hereby created into as many separate and equal shares as may be necessary to provide one share for the benefit of each of my children then living, and one share for the benefit of the then living descendants of any deceased child per stirpes, and said shares shall thenceforth be

held by my trustee for the following uses and purposes:

"(a) The entire net income of each share so set apart for each such beneficiary shall be paid to him in monthly, quarterly, or annual installments as my trustee in its sole discretion may determine.

"(b) If any such beneficiary is not living at any distribution date, then the income which would have been payable to him if living shall be paid to his descendants per stirpes.

"(c) If any such beneficiary shall not be living at distribution date and shall leave no descendants surviving him, the income, which would have been payable to such beneficiary if living, shall be distributed in equal shares to the original beneficiaries herein provided for, then living, and to the descendants of any deceased beneficiary per stirpes.

"(d) If all of such beneficiaries shall die without descendants prior to my death, or during the life of this trust, and my wife, Charlotte Bennett, is then living, the entire income each year from each of the shares shall be paid to her for the remainder of the life of this trust.

"(e) So long as any beneficiary under this paragraph of my will shall be under twenty-five (25) years of age, my trustee in its sole discretion may expend all or any part of the income payable in respect of such minor beneficiary for his education or for his maintenance and support, or may pay same over to the natural or legal guardian of such child for such purposes. Any residue of any minor beneficiary's interest in any year's income, which has not been so expended by my trustee by the end of the calendar year following the year of its receipt, shall be held by my trustee, together with any accumulations thereon until such minor beneficiary becomes twenty-five (25) years of age, or marries, whichever occurs first, at which time same shall be paid over to such beneficiary. If such minor beneficiary dies before he is paid such accumulat-

ed income, leaving descendants, such accumulated income shall be paid to such descendants per stirpes, or, if he dies without descendants, at his death such accumulated income shall be paid to the surviving beneficiaries and to their descendants per stirpes.

"(f) Each of the separate trusts provided for in this paragraph of my will shall terminate on the date the youngest of my surviving children shall become twenty-five (25) years of age, or upon the death of my wife, Charlotte Bennett, whichever occurs last. Upon the termination of each of said trusts, the corpus thereof shall be paid to the beneficiary in whose behalf same was set up, if living; otherwise, to his descendants per stirpes, and, if he leaves no descendants, then same shall be paid in equal parts to the then living beneficiaries in whose behalf separate trusts were set up hereunder and to the descendants of any deceased beneficiary per stirpes. If, prior to the termination of this trust, all of the beneficiaries, in whose behalf separate trusts were set up hereunder, shall have died without leaving descendants, then, upon the termination of such trusts, the corpus thereof and any undistributed income shall pass to my heirs at law under the inheritance laws of the Commonwealth of Kentucky then in force.

"Paragraph VI"

"In dividing the residue of my estate into two equal parts for the purpose of setting up Trust A and Trust B, there shall be set up and included as a part of the corpus of Trust A only seven hundred and fifty (750) shares of the common stock of the V & C Coal Company owned by me at the time of my death, the remainder of such stock owned by me to constitute a part of Fund B.

"Paragraph VII"

"I hereby appoint an advisory committee to consist of my wife, Charlotte Bennett, and my children, Harry M. Bennett, Henderson H. Bennett, Clyde V. Bennett and Anna Ruth Bennett. Upon the death of my said wife, the vacancy on such committee

caused by her death shall not be filled. Upon the death of any of my said children, the vacancy caused by such death shall be filled by my oldest surviving child, if any; otherwise, the vacancy shall not be filled. The Advisory Committee shall consult and advise with the trustee herein designated, and any successor thereto, in the administration of the trusts herein set up and provided for, and shall possess the powers specified in Paragraphs VIII and IX of this will.

"Paragraph VIII"

"The Trustee herein designated shall have full power to hold and manage each of the trust estates provided for in this will, to sell, mortgage, lease or convey property constituting a part of either of said trust estates upon such terms and conditions and in such manner as it shall determine; to invest and reinvest the same in such loans, stocks, bonds, securities and real estate as it may deem proper and suitable without being restricted to any class of investments which a trustee may now or hereafter be permitted by law to make; provided, however, that no securities in my estate at the time of my death or thereafter shall be sold, nor shall any new investments be made without the consent in writing of the majority of the Advisory Committee; and in no event shall the V & C Coal Company stock in either of the trusts be sold without the unanimous consent of my trustee and the members of the Advisory Committee.

"My trustee shall have full power and authority to vote any stock held in either of the trust estates at its discretion (except the stock of the V & C Coal Company), unless, prior to the meeting at which such stock is to be voted, the majority of the Advisory Committee shall in writing direct the trustee as to such vote. During her lifetime, the stock of the V & C Coal Company in each of said trusts shall be voted in accordance with the written direction of my wife, Charlotte Bennett. My trustee shall have power to subscribe to stock rights. All premiums on investments in bonds or notes purchased by the trustee at more than par shall be charged to principal and shall not be amortized out of income, and all discounts on any such investments purchased at less than par shall be credited to principal. All stock dividends and dividends in liquidation and rights to subscribe to stock shall be considered and treated as principal. All cash dividends shall be considered as income.

"Paragraph IX"

"My Advisory Committee shall have the right at any time by unanimous action to remove the trustee herein designated, and to appoint as its successor another trust company having a capital stock of not less than one million dollars ($1,000,000.00). Any successor trustee shall have the same powers and be subject to the same limitations as the trustee herein designated.

"Paragraph X"

"I nominate and appoint Harlan National Bank, Trust Department, Harlan, Kentucky, as Executor of my will. My executor shall have full power to do any and all things necessary for the complete administration of my estate, including the power to sell at public or private sale and without order of court any real or personal property belonging to my estate necessary to be sold in order to pay the debts and costs of administration, and taxes due by the estate, and the right to execute such deeds or other conveyances as may be necessary to convey good title to the property sold; but, so long as any other property of my estate remains available for such purposes, the stock of the V & C Coal Company shall not be so sold without the unanimous consent of the Advisory Committee and of the trustee. My executor shall also have the same power to settle and compromise any and all claims, charges, debts and demands against or in favor of my estate as I would have if living.

"In testimony whereof, I do subscribe my name to this my Last Will and Testament, which consists of this and six pre-

ceding pages, and for the purpose of identification I have also subscribed my name at the bottom of each of said preceding pages, on this 14th day of September, 1950."

"(s)   C. V. Bennett"

"We, the undersigned, hereby certify that the foregoing instrument, consisting of seven typewritten pages, including this page, the preceding pages being identified by the signature of the testator on the lower right-hand corner thereof, was on this the 14th day of September, 1950, signed and acknowledged by the said C. V. Bennett in our presence as his Last Will and Testament, and each of us, on the same date, in his presence and at his request, and in the presence of each other, does subscribe his name as a witness thereto.

"(s)   Alice E. Spahn   Residing at
Louisville, Ky.
2733  Virginia  Ave.

"(s)   Moses Master      Residing at
Louisville, Ky.
2012 Slaughter Ave.

"(s)   Harry Welenken  Residing at
Louisville, Ky.
2501 Meadow Road"

"State of Kentucky
County of Harlan

"I, Ruby Middleton Ader, Clerk of the County Court for the County and State aforesaid, certify that the foregoing Will of C. V. Bennett and the order probating same was on the 12th day of August, 1953, at 12:18 p.m. lodged in my office, to be recorded, whereupon the same with the foregoing and this certificate have been duly recorded in Will Book No. 3, at page 89.

"Witness my hand, this 18th day of August, 1953."

"Ruby Middleton Ader, Clerk
"By Irene Schackleford, D. C."